763 So.2d 74 (2000)
STATE of Louisiana
v.
Charles W. BOLES, Jr.
No. 99-KA-0427.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 2000.
*76 Harry F. Connick, District Attorney of Orleans Parish, Cate L. Bartholomew, Assistant District Attorney of Orleans Parish, New Orleans, LA, Counsel for Plaintiff/Appellee.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, LA, Counsel for Defendant/Appellant.
Court composed of Judge MOON LANDRIEU, Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III.
LANDRIEU, Judge.
Defendant appeals his conviction of distribution of cocaine and his sentence as a third felony offender. We affirm.
Charles W. Boles, Jr., was charged by bill of information on July 14, 1998, with distribution of cocaine, a violation of La. R.S. 40:967. At his arraignment on July 31, 1998, he entered a plea of not guilty. His first trial ended in a mistrial. He was retried on September 16, 1998, and the jury found him guilty as charged. On December 15, 1998, he was sentenced to twenty years, with credit for time served, the first five years of the sentence to be served without benefit of parole, probation or suspension of sentence. That same day the State filed a multiple bill, and on March 3, 1999, the court adjudged him a third felony offender. The court vacated his original sentence and sentenced him pursuant to La. R.S. 15:259.1 to serve life imprisonment at hard labor with credit for time served, the first five years of the sentence to be served without benefit of parole, probation or suspension of sentence. The court denied his motion to reconsider the sentence, and this appeal followed.

FACTS
Lt. David Bonelli testified that on June 23, 1998, he and his partner, Sgt. Michael Glasser, were working undercover in a drug buy/bust operation. As they rode in their unmarked police vehicle in the 600 block of S. Lopez St., the defendant walked up to their car and asked what they were looking for. Sgt. Glasser responded that he was looking for cocaine. The defendant asked to see their money, so Sgt. Glasser handed the defendant a previously recorded, specially marked $20.00 bill. The defendant removed a small plastic bag from his mouth and handed it to Sgt. Glasser. As the officers rode out of the vicinity, they broadcast the defendant's identity to other takedown units in the area waiting to make the arrest. Once the defendant was arrested, Lt. Bonelli and Sgt. Glasser returned to the scene to verify that the arresting officers had apprehended the correct suspect. After his apprehension, the defendant was photographed.
At trial, the State and defense entered into a stipulation whereby they agreed that if Sgt. Michael Glasser were called to the stand his testimony would be the same as Lt. Bonelli's.
Officer Matthew Fihlman testified that he participated in the drug buy/bust operation in which Lt. Bonelli and Sgt. Glasser worked undercover. He worked as uniformed backup who physically apprehended the defendant. Less than five seconds after Bonelli and Glasser broadcast the defendant's description, Officer Fihlman was on the scene and saw the defendant walking in the street. When the defendant saw the backup units approaching, he ran into a side alley and under a house. Officer Fihlman followed the defendant and pulled him from his hiding place. He searched the defendant, but did not find any drugs or the marked $20 bill in the defendant's possession. Approximately three minutes after the defendant's apprehension, Bonelli and Glasser returned to verify the defendant's identity. Officer Fihlman identified the picture taken of the defendant immediately after his apprehension.
The State and the defense stipulated that if Officer John Palm, an expert in testing and identification of controlled dangerous substances, was called, he would *77 confirm that the substance received by Lt. Bonelli from the defendant tested positive for cocaine.
Officer Randy Loumiet testified that he participated in the defendant's arrest, and corroborated the testimony given by Lt. Bonelli and Officer Fihlman. Officer Loumiet further testified that in anticipation of the drug purchase, he had marked a $20 bill by drawing glasses on the figure of Andrew Jackson and then had photocopied the bill. When Officer Loumiet arrived on the scene, he learned that the defendant did not have the marked $20 bill, so he proceeded to retrace the defendant's flight path and found the marked bill in the grass. Officer Loumiet identified the $20 bill entered into evidence.
Terry James Powe, Jr. testified for the defense, explaining that he was with the defendant the night of his arrest. He stated that he, the defendant and Stephen, a mutual friend, were together in front of Stephen's house in the 600 block of S. Lopez at about 9:30 p.m. when they noticed a blue car drive into the neighborhood. A black male wearing a white shirt approached the car and engaged in conversation with the driver. Shortly thereafter, the car drove away and the black male walked around the corner out of sight. Then two unmarked cars came from opposite directions on Lopez St. and stopped. He and Stephanie and the defendant ran in opposite directions because they feared the men in the cars intended to rob or shoot them. When Powe later returned to the area, he learned that the defendant had been arrested. Powe denied that the defendant sold drugs.
Stephanie Knight also testified for the defense and corroborated Terry Powe's testimony. She added that when the unmarked cars pulled up, the police jumped out of their vehicles and chased the defendant.
The defendant testified that on the night he was arrested, he was visiting with Terry Powe and Stephanie Knight in the 600 block of S. Lopez Street. The three witnessed a blue car drive up and almost stop in front of Stephanie's house. A black male approached the vehicle and began speaking with the driver. The defendant believed that a drug deal was in the making. The black male walked around the corner, and the blue car drove off. About ten to fifteen minutes later, two unmarked police cars sped into the area. Fearing that he would be shot or robbed, the defendant ran and hid. He denied selling drugs that night. Under cross-examination the defendant admitted to having prior convictions for possession of cocaine and unauthorized entry.

PRO SE ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, the defendant argues that the evidence is insufficient to support his conviction.
In State v. Ash, 97-2061 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, writ denied, 99-0721 (La.7/2/99) 747 So.2d 15, this court summarized the standard of review that applies when a defendant claims that the evidence produced to convict him was constitutionally insufficient:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of *78 fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4 th Cir.1989). When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proved such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
The defendant was charged with, and convicted of, distribution of cocaine, in violation of La. R.S. 40:967(A)(1). The statute provides that, "[e]xcept as authorized by this Part or by Part VII-B of Chapter 5 of Title 40 of the Louisiana Revised Statutes of 1950," it is unlawful for any person to knowingly or intentionally distribute cocaine. In order to prove distribution of cocaine, the State had to show that the defendant transferred its possession or control to his intended recipient. State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132.
Officer Bonelli testified that as he and Sgt. Glasser rode in their unmarked vehicle, the defendant approached them and offered to sell them cocaine. The defendant produced a rock of cocaine packaged in a small plastic bag in exchange for $20.00. Officer Bonelli identified the plastic bag of cocaine the defendant "sold" the officer. Furthermore, Officer Loumiet identified the copy of the marked $20.00 bill used in the buy. In light of this testimony, the jury could have reasonably concluded that the defendant was guilty of distribution of cocaine. This assignment is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 2
In this assignment, the defendant contends that his conviction is tainted because the State failed to show the quantity of cocaine distributed.
This argument is actually a sufficiency of the evidence argument. The defendant was charged with, and convicted of, distribution of cocaine, in violation of La. R.S. 40:967 A(1). As discussed in the previous assignment, the State simply had to prove the defendant transferred possession of the drug to another person. Quantity is irrelevant.
Therefore, this assignment is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 3
By this assignment of error, the defendant maintains that he was denied a fair and impartial trial because his attorney withdrew all pre-trial motions. This act, the defendant argues, denied him the right to contest the evidence, confessions, statements and identification before trial.
This assignment is without merit. A minute entry dated August 5, 1998 indicates that certain defense motions were only withdrawn after the State had satisfied the requests. Moreover, there was no confession for the State to offer, and the only evidence "seized" in this case was either given to the officers by the defendant during the offense or retrieved from the ground. As for statements and witnesses, the record shows that defense counsel carefully reviewed all the evidence, and ably questioned and cross-examined all witnesses during the trial.

PRO SE ASSIGNMENT OF ERROR NUMBER 4
In this assignment, the defendant complains that prior to the multiple bill hearing he requested, but did not receive, *79 a copy of his Boykin transcripts. He argues that without the transcripts, he was denied the right to demonstrate that his guilty pleas were unconstitutionally obtained.
The record indicates that the defendant pro se filed a pleading entitled "Application for Issuance of a Writ of Subpoena Duces Tecum" in which he sought, among other things, the Boykin transcripts from his three prior convictions. There is nothing in the record to suggest that the defendant's motion was ruled upon, nor does the record indicate that he objected to proceeding with the multiple bill hearing in the absence of Boykin transcripts. In State v. Windham, 630 So.2d 688 (La. 1993), the court stated:
In the absence of a contemporaneous objection at the multiple offender hearing, the defendant otherwise may not complain for the first time on review that the records of his guilty pleas introduced by the state at the multiple offender hearing did not reflect compliance with this court's Boykin rules.
In this case, the defendant did not object to the absence of the Boykin transcripts at the multiple offender hearing. Accordingly, he is precluded from raising this issue on appeal.

PRO SE ASSIGNMENT OF ERROR NUMBER 5
By this assignment, the defendant complains he was denied effective assistance of counsel.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post-conviction relief, filed in the district court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983). Such a claim is assessed by the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland at 694, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 th Cir.1992).
In this case, the defendant complains that counsel's withdrawal of all pre-trial motions, his failure to obtain the Boykin transcripts, and his failure to file written objections to the multiple bill of information constituted ineffective assistance of counsel.
As stated previously, we have determined that the defendant suffered no prejudice from the dismissal of pre-trial motions. As for his claims relative to the Boykin transcripts and objections to the multiple bill of information, presumably defendant's intent is to prove his prior convictions defective as based upon flawed guilty pleas.
Where a prior conviction resulted from a guilty plea, the State must show that the defendant was advised of his constitutional rights and that he knowingly waived those rights prior to the guilty plea, as required by Boykin v. Alabama, *80 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). State v. Shelton, 621 So.2d 769 (La.1993). If the defendant denies the allegations of the bill of information, the State has the burden of proving the existence of the prior guilty pleas and that defendant was represented by counsel. Shelton, supra, at 779. Once the State meets this burden, defendant must produce some affirmative evidence of an infringement of his rights or of a procedural irregularity. Thereafter, the State must prove the constitutionality of the plea. Id.
In proving the constitutionality of the plea, the State must produce either a "perfect" transcript of the Boykin colloquy between the defendant and the trial judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an "imperfect" transcript. Shelton, supra, at 780. If anything less than a "perfect" transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant's prior guilty plea was informed and voluntary. Id.
At the multiple bill hearing in this case, the State introduced the bill of information, fingerprint records, sentencing form, minute entry, and the waiver of rights form for each of the two predicate offenses alleged by the State. The waiver of rights forms are signed and initialed in the appropriate places by the defendant, defense counsel and the judge. The respective minute entries recite that the judge verbally advised the defendant of, and that the defendant understood, his constitutional rights, more particularly the right to trial by judge or jury; the right to appeal; the right to confront and cross-examine the witnesses against him, and his privilege against self-incrimination now and at the time of the trial. Moreover, defense counsel vigorously opposed the multiple bill.
In light of the overwhelming evidence of the constitutional propriety of the defendant's prior guilty pleas, the defendant was not prejudiced by defense counsel's failure to obtain the Boykin transcripts. This assignment is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 6, COUNSEL ASSIGNMENT OF ERROR NUMBER 1, ERRORS PATENT
In a final assignment of error, the defendant attacks his sentence as unconstitutionally excessive.
La. R.S. 15:529.1 provides in pertinent part:
A. (1) Any person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
* * *
(b)(ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
The defendant was adjudicated a third felony offender for distribution of cocaine. This conviction was a violation of the Uniform Controlled Dangerous Substances Law, punishable by a term of more than five years; therefore, the law mandates a sentence of life imprisonment, without benefit of parole, probation or suspension of sentence. However, the district court ordered that only the first five years of the sentence be served without benefit of probation, parole or suspension of sentence. Therefore, the sentence is illegally lenient, which constitutes an error patent. Nevertheless, since the State has failed to raise the issue, we will *81 not correct the sentence. State v. Fraser, 484 So.2d 122 (La.1986).
Whether a sentence imposed is excessive depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. Art. I, Sec. 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985).
The appellate courts of this state have recognized that declaring a sentence under the Habitual Offender Law constitutionally excessive should be a rare act, not a commonplace practice. State v. Lacoste, 97-1113 (La.App. 4 Cir. 5/28/97), 695 So.2d 1121. Furthermore, the minimum sentence compelled by Louisiana law is presumed not to be excessive. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 675.
In this case, the State presented evidence that the defendant was a fourth felony offender with convictions in 1989, 1990, 1991 and 1992. The 1989 conviction was a guilty plea entered under the former La. R.S. 40:983, which cannot be used to enhance a multiple bill[1]; therefore the judge found defendant to be a third felony offender. However, as either a third or fourth felony offender, he faced mandatory life imprisonment.
In sentencing the defendant, the trial court noted:
If you look at his background, one case involves possession of cocaine, two pieces. Then another case is possession of cocaine, drug paraphernalia. And then you have the burglary charge where he was a second offender sentenced to 6 years in Section "C" by Judge Winsberg. Apparently, he got out, a very short period of time, goes back to the street and selling drugs.
I'm sorry, Mr. Boles, I am. I'm sorry. You've (sic) haven't done anything to try to help yourself, man. It's the sentence of the Court with regard to Charles Boles having been found to be a third felony offender  third felony offender, third offense being a distribution of cocaine  under 15:529.1 this Court is required to impose a sentence of life imprisonment at hard labor ...
Since he is being sentenced under the distribution of cocaine, the first five years of that sentence  the first five years of that sentence shall be without the benefits of probation, parole, or suspension of sentence.
Given the defendant's criminal history, we cannot say that the life sentence he received as a third felony offender is excessive. The sentence is not grossly out of proportion to the seriousness of the offense.
Therefore, this assignment of error is without merit.

CONCLUSION
Accordingly, for the reasons stated, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] R.S. 40:983, repealed in 1995, pertained to conditional discharge for possession as a first offense, and provided, in pertinent part, that discharge and dismissal under that Section "shall not be deemed a conviction" which would subject the offender to additional penalties under the multiple offender statute.