CHARLES R. JONES, Judge.
hThe Appellant, Alphonse Moore, seeks review of his conviction and sentence for armed robbery and being found to bé a second felony offender. Finding no error on the part of the district court, we affirm.
On August 21, 2008, Moore and his code-fendant were charged with armed robbery. The district court denied the motions to suppress the evidence, identification, and statement and found probable cause. The charge against the codefendant was amended to accessory after the fact, and she entered a guilty plea as charged. The jury found Moore guilty as charged, and he was sentenced to serve fifteen years at hard labor without benefit of parole. Moore was then adjudicated a second felony offender. After vacating the previous sentence imposed, the district court resen-tenced him to serve forty-nine years and six months at hard labor without benefit of parole. Moore’s motion to reconsider sentence was denied, but his motion for appeal was granted.[1]
On the morning of June 22, 2008, Darrell Garnett was walking in the 1300 block of Bienville Street on his way to work when he was approached by a man and a woman. The man asked him a question while simultaneously grabbing Mr. | ^Garnett’s right arm. The man was *1036 armed with a knife. Both the male and female searched Mr. Garnett’s pockets, finding money. The male then stabbed Mr. Garnett in the chest, and they searched a green tote bag that Mr. Gar-nett was carrying. Inside the tote bag, they found Mr. Garnett’s wallet and a CD player that they took before fleeing.
Officer Jeffrey Tyler was the first to arrive on the scene. He found Mr. Gar-nett on the ground bleeding. Before being transported to the hospital, Mr. Garnett gave a description of the perpetrators that was dispatched over the police radio. The male was wearing jeans and a light blue shirt with an Air Jordan logo. The female was wearing a brown shirt, cut off shorts, and a pink Las Vegas visor.
Sergeant Arnold Williams was on Canal Street when he heard the dispatch regarding the robbery and the description of the two perpetrators. Two individuals fitting the description crossed in front of his car. They were headed in the opposite direction from which the sergeant was traveling. The female was carrying a white plastic bag. Sergeant Williams called dispatch and executed a U-turn, but lost sight of them while he was turning. He last saw the individuals at the corner of Claiborne Avenue and Canal Street near a hotel. A cab was parked at the hotel.
Officer Donald Nydes responded to the dispatch that the perpetrators had fled towards a hotel on the corner of Claiborne Avenue and Canal Street. Once he arrived at the hotel he received information that caused him to continue to drive down Canal Street looking for a cab occupied by a male and a female. When he could not find the cab, he returned to the hotel. At the hotel, the officer approached a United Cab that was at the hotel and spoke to the driver, Faisal Samad. Mr. Samad told the officer that he picked up a male and a female and dropped them off at the corner of Banks Street and Jefferson Davis Parkway. ^Officer Nydes proceeded to that corner and apprehended the subjects with the help of a female officer. After other officers arrived, the subjects were returned to the hotel. Officer Eugene Smothers advised the two subjects of their Miranda rights. The female gave an in-culpatory statement that included the location of where the victim’s property could be located. The subjects were then arrested, and a sum of money was taken from the male in a search incident to his arrest. They were identified by the cab driver as the two people who had entered his cab, and by Sergeant Williams as the individuals who had crossed in front of his police vehicle. Officer Tyler and Sergeant Williams retrieved the victim’s property that was discarded in a plastic grocery bag on top of a garbage pile at the corner of Banks Street and Jefferson Davis Parkway.
Detective Douglas Butler met with the female subject, Cherisse Fox, at the station. Before he interviewed her, he provided Fox with a rights of arrestee form and informed her of her Miranda rights. Fox voluntarily elected to make a taped statement and signed the form waiving her lights. At trial, Fox could not remember anything regarding the incident, including giving a statement. She admitted that she knew Moore, her former codefendant, and that she entered a guilty plea to accessory after the fact to armed robbery. The tape of her statement was played for the jury. Detective Butler identified his and her voices on the tape.
Officer Smothers met with the victim, Mr. Garnett, at his place of employment to show the victim a photographic lineup. The victim immediately identified Moore; he could not identify Cherisse Fox. Mr. Garnett explained that his focus was on Moore because Moore had the knife.
*1037 In the sole assignment of error raised by counsel and assignments of error numbers one and two of Moore pro se, counsel and Moore, pro se, argue that the 14district court erred in permitting the introduction of testimonial hearsay evidence in the form of the taped statement of Moore’s former codefendant in violation of the Confrontation Clause. Though called to testify by the state, Ms. Fox indicated that she could not remember anything even after her memory was refreshed. The court ordered her to testify, noting that she faced no criminal liability as she had already entered a guilty plea to accessory after the fact. Ms. Fox still did not cooperate. Hence, she was declared unavailable by the court and placed in contempt. The court then ruled that the tape of her statement was admissible as a statement against interest under La. C.E. art. 804(B)(3). Moore urges in his second assignment of error that the district court erred in declaring that it was a statement against interest.
 The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. This right provides two types of protections for a criminal defendant: the right physically to face those who testify against him and the right to conduct cross-examination. See also La. Const. Art. I, § 16; La. R.S. 15:273. State v. Welch, 99-1283 (La.4/11/00), 760 So.2d 317; State v. Grainer, 2002-0703 (La.App. 4 Cir. 12/4/02), 834 So.2d 555. Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(C). Hearsay is not admissible except as otherwise provided by statute. La. C.E. art. 802. Hearsay evidence is excluded because the value of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability. State v. Everidge, 96-2665, p. 7 (La.12/2/97), 702 So.2d 680, 685; State v. Legendre, 2005-1469, p. 7 (La,App. 4 Cir. 9/27/06), 942 So.2d 45, 50.
•La. C.E. art. 804 provides that the following are not excluded by the hearsay rule if the declarant is unavailable as a witness. La. C.E. art. 804(B)(3), provides in pertinent part:
• B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
[[Image here]]
(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant’s pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true.
The statement of Ms. Fox began with Detective Butler again advising her of her Miranda rights. Ms. Fox indicated that she understood her rights and was voluntarily waiving her rights; she acknowledged her signature on the rights of arrestee form. Ms. Fox admitted placing money in her pocket that Moore had given her and taking a bag from Moore when he handed it to her. The remainder of her statement implicated Moore.
Ms. Fox stated that when she first saw Moore on the morning of the robbery, he had nothing in his hands.- Usually they met up with each other under the overpass at the corner of Claiborne Avenue and Canal Street. They were walking together when Moore strolled up ahead of her and *1038 approached the victim. Ms. Fox thought the two men were talking. As she neared them, Moore walked away from the victim, who was now lying on the sidewalk. He told her to take a bag that contained a wallet and a CD player. Ms. Fox did not see any blood. Moore was | (¡fumbling with some money in his hand when she observed the blade of a knife fly from his hand into the grass. Moore began running and told her to follow him. When she caught up to him, he was climbing into the back of a cab, and he told her to get in the cab. The cab driver dropped them off at the corner of Banks Street and Jefferson Davis Parkway. Moore discarded the bag containing the victim’s property on a trash pile, intending to retrieve the bag later. The police subsequently arrived. Ms. Fox showed the police where the bag was discarded.
The statement of Ms. Fox qualified under the declaration against penal interest exception to the hearsay rule making the statement admissible. La. C.E. art. 804(B)(3). In her statement, Ms. Fox admits taking the bag containing items stolen from the victim, placing money in her pocket that was given to her by Moore, and fleeing with Moore despite her knowledge of the robbery. This evidence sufficiently supports her guilty plea to accessory after the fact. La. R.S. 14:25.
However, in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the U.S. Supreme Court found that certain ex parte examinations, while admissible under hearsay rules, are the type of testimonial evidence against the accused that the Confrontation Clause is supposed to prevent. The Supreme Court held that the Sixth Amendment bars admission of testimonial statements by a witness who did not appear at trial unless he was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. In Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the U.S. Supreme Court declared that “[statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.” Conversely, statements are “testimonial when the circumstances objectively indicate there is no such ongoing |7emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecutions.” Id., 547 U.S at 822, 126 S.Ct. 2266.
Here, the statement given by Ms. Fox was clearly testimonial. Thus, the first inquiry under Crawford is whether Ms. Fox was unavailable. The state argues that no violation of the Confrontation Clause exists because the declarant, Ms. Fox, was available for cross-examination. However, the court previously declared her as unavailable pursuant to La. C.E. art. 804(B)(3) because she was either unresponsive or could not remember anything despite the state’s attempt to refresh her memory with her statement. Because she was declared unavailable by the court, defense counsel rightfully declined to cross-examine Ms. Fox as she already stated that she could not remember anything surrounding the robbery including giving a statement. See State v. Williams, 2004-608, pp. 10-11 (La.App. 5 Cm. 11/30/04), 889 So.2d 1093, 1101-02. Because Moore was not provided with a prior opportunity to confront Ms. Fox, the district court erred by admitting the statement of Ms. Fox at trial.
Although improperly admitted, confrontation errors, including Crawford violations, are subject to a Chapman v. State of California, 386 U.S. 18, 87 S.Ct. *1039 824, 17 L.Ed.2d 705 (1967), harmless error analysis.
The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination were fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt.... Factors to be considered by the reviewing court include “the importance of the witness’ testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of crossjexamination8 otherwise permitted, and, of course, the overall strength of the prosecution’s case.”
State v. Wille, 559 So.2d 1321, 1332 (La.1990) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).
Here, the error was harmless. Much of what was revealed in the statement by Ms. Fox was cumulative. For instance, the sequence of events provided by Ms. Fox was corroborated through the testimony of the cab driver and Sergeant Arnold, both of whom identified Moore and Ms. Fox after they were apprehended. The bag seized by police was found on a trash pile and contained the victim’s wallet and CD player as indicated by Ms. Fox. Importantly, Mr. Garnett was certain in his identification of Moore as the person who robbed him at knifepoint and who stabbed him. Thus, considering the evidence presented at trial, the guilty verdict rendered was unattributable to the error. These assignments of error are without merit.
In the third assignment of raised by Moore, he asserts that the district court erred by allowing the admission of the suggestive out-of-court identification at trial.
A defendant has the burden of showing that the identification was suggestive and that the procedure resulted in the likelihood of misidentification. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Holmes, 2005-1248 (La.App. 4 Cir. 5/10/06), 931 So.2d 1157. A “suggestive identification” is one that unduly focuses the witness’s attention on. the defendant. However, even if a defendant shows that an identification is suggestive, a defendant’s due process rights are only violated if there is a showing of the likelihood of misidentification. State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916. Once an identification procedure has been |flfound to be suggestive, a reviewing court must look to the five factors set forth in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), to determine whether a suggestive identification presents a substantial likelihood of mis-identification: (1) the witness’s opportunity to view the assailant at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the witness’s prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. A trial court’s ruling on the admissibility of an identification is entitled to great weight and must not be disturbed unless the trial court abused its discretion by so ruling. Holmes, 2005-1248, p. 6, 931 So.2d at 1161; State v. Offray, 2000-0959 (La.App. 4 Cir. 9/26/01), 797 So.2d 764.
Moore argues that the identification procedure was suggestive because his was the only photograph of six where the mouth of the subject was open showing a gold tooth. He adds that there was insufficient opportunity for the victim to view him because the victim admitted that the crime happened quickly, and he was focused on the *1040 knife. Moore also urges that the lack of a detailed description of his assailant also makes the identification by Mr. Garnett unreliable. Finally, he argues that there was a substantial likelihood of misidentifi-cation because of the length of time between the actual crime and the date that the victim viewed the lineup.
Although Detective Smothers used photographs in the lineup that were randomly selected by computer, the photograph of Moore is distinguishable from the other photographs in that he is the only one with his mouth open showing a gold tooth. Thus, assuming that the photographic lineup was suggestive, | inconsideration of the factors listed in Manson v. Bmthwaite nonetheless shows that the identification was reliable under the totality of the circumstances.
According to the victim, Mr. Garnett, he had ample opportunity to closely view Moore on the date of the incident. Mr. Garnett testified that the incident spanned a couple of minutes and that he focused solely on Moore because Moore was the subject with the knife.
Mr. Garnett gave a description of Moore which consisted only of a clothing description and description of his skin tone.[2] The accuracy of the clothing description is what led both Moore and Ms. Fox to be apprehended by police. Both were also identified by two other witnesses: Faisal Samad identified Moore and Ms. Fox as the two people who entered his cab and were dropped off at the corner of Banks Street and Jefferson Davis Parkway, and Sergeant Williams identified Moore and Ms. Fox as the two individuals who he saw cross in front of his vehicle. This assignment of error is without merit.
By his fourth and final assignment of error, Moore, pro se, argues that the district court erred in adjudicating him a second felony offender when the instant offense occmred more than ten years after the discharge date from the previous offense.
The record indicates that Moore did not file a written response to the multiple bill as required by La. R.S. 15:529.1(D)(l)(b), and the only objection lodged during the multiple bill hearing concerned Moore’s identity as the person previously convicted. When the record does not contain a written response by the defendant to the multiple bill or his oral objection, the issue is not preserved for | nappellate review. State v. Cossee, 95-2218 (La.App. 4 Cir. 7/24/96), 678 So.2d 72; State v.Boles, 99-0427 (La.App. 4 Cir. 5/10/00), 763 So.2d 74.
Moore additionally argues that the district court failed to vacate the original sentence prior to imposing his sentence as a multiple offender as evidenced by the transcript of the multiple bill hearing. Though the transcript does not reflect that the original sentence was vacated, the minute entry of sentencing shows that the original sentence was vacated. Therefore, Moore is not entitled to any relief. See State v. Mayer, 99-8124 (La.3/31/00), 760 So.2d 309.
Lastly, our review of the record reveals that there are no patent errors.

DECREE

For the foregoing reasons, we affirm the conviction and sentence of Alphonse Moore.
AFFIRMED.

. The sentencing transcript also shows that the defense waived sentencing delays after the motion for new trial was denied.

. Based upon Mr. Garnett’s testimony at trial, it is unclear whether he even noticed Moore's gold tooth during the robbery,