In State v. Jones , this Court enumerated the following key principles governing a sufficiency of the evidence review:
First, we examine all the evidence considered by the jury, including evidence which may have been erroneously admitted. Second, all the evidence is viewed in the light most favorable to the prosecution. Thus, we may consider all reasonable inferences from the evidence which the factfinder could have made.
Finally, as a reviewing court, we are highly deferential to the findings of the trier of fact. A jury may accept as true the testimony of any witness, even a single witness, and find such testimony sufficient to establish each essential element beyond a reasonable doubt. And, we will only tread on a jury's presumed acceptance of a witness's testimony when that testimony is implausible or clearly contrary to the evidence.
15-0956, p. 5 (La. App. 4 Cir. 3/22/17), 214 So.3d 124, 133 (citations omitted).
"Circumstantial evidence is defined as evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts." State v. Shapiro , 431 So.2d 372, 378 (La. 1982). When circumstantial evidence forms the basis of the conviction, such evidence must consist "of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience." Id. The elements must be proven such that "every reasonable hypothesis of innocence" is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, but rather an
"evidentiary guideline" to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198, 1201 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt *1082 standard. State v. Jacobs, 504 So.2d 817, 820 (La. 1987).
"A reasonable alternative hypothesis is not one 'which could explain the events in an exculpatory fashion,' but one that 'is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt' " State v. Mack , 13-1311, p. 9 (La. 5/7/14), 144 So.3d 983, 989 (quoting State v. Captville , 448 So.2d 676, 680 (La. 1984) ). Therefore, "where the evidence is purely circumstantial, if it does not exclude every reasonable hypothesis of innocence, a rational juror cannot find defendant guilty beyond a reasonable doubt without violating constitutional due process safeguards." State v. Monds , 91-0589 (La. App. 4 Cir. 1/14/94), 631 So.2d 536, 539.
Ms. Raine contends that the circumstantial evidence does not exclude every reasonable hypothesis of innocence. She maintains that the State presented no direct proof that she spoke with Mr. Everette about killing Mr. Smith. Additionally, Ms. Raine advances two bases for her theory of innocence. First, she claims that Mr. Raine may have acted without her knowledge, claiming that she would pay for the killing because Mr. Everette likely knew that Mr. Raine did not have the money. Second, Ms. Raine avers that evidence indicating that she increased the life insurance policy on Mr. Smith does not show a motive to kill, as she increased the policy because the victim bought a motorcycle and she was not a beneficiary on the policy at the time of his death.
In State v. Mack , the Louisiana Supreme Court found that direct evidence that the defendant threatened the victim and thereafter used a cell phone, along with circumstantial evidence of a web of phone calls between the defendant and the shooter, was sufficient to support a conviction of second degree murder. 13-1311, p. 10, 144 So.3d at 989. In Mack , the defendant interjected himself into an argument between the victim and a third party and then threatened the victim. Id. , p. 4, 144 So.3d at 986. After the argument, witnesses observed the defendant on his phone. Id. , p. 3, 144 So.3d at 985. About twenty minutes later, another person shot and killed the victim. Id. Phone records revealed a total of twelve calls between the defendant and the shooter in the hours before and after the shooting, along with numerous phone calls between the two during the days before and after the shooting. Id. at pp. 2-6, 144 So.3d at 985-87. Despite the defendant introducing alternative hypotheses of innocence, such as that someone else recruited the shooter or that the shooter and victim had an underlying dispute, the Louisiana Supreme Court found sufficient evidence to support the jury verdict. Id. at pp. 10-14, 144 So.3d at 989-92.
Likewise, in State v. Shapiro , the deceased victim and the defendant were the only witnesses to the crime. 431 So.2d at 373. The State's case relied almost entirely on circumstantial evidence. However, the Louisiana Supreme Court upheld the conviction for second degree murder, finding ample evidence "that a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded." Id. at 378-79. The circumstantial evidence in Shapiro included evidence that the victim died from a gunshot fired from a gun owned by the defendant, that the defendant had gunshot residue on his hands but the victim did not, and that the defendant and victim had an altercation earlier in the night. Id. at 377-78.
In the instant case, viewing all the evidence in a light most favorable to the prosecution, it cannot be said that the jury's conclusion that the State proved Ms. Raine guilty of second degree murder was *1083 clearly erroneous. As in Shapiro , there exists ample evidence such "that a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded." Id. at 378-79.
The uncontested evidence showed that Ms. Raine had a life insurance policy on Mr. Smith, which she originally purchased in 1997. From 2000 to 2005, Ms. Raine increased the amount of that insurance policy from its original value of $100,000 to the $800,000 the policy paid upon the victim's death. On February 20, 2006, two months before the shooting of Mr. Smith, Ms. Raine executed a beneficiary change form, removing herself as a beneficiary and naming instead Mr. Raine (who would become her third husband) and Mr. Smith (so that the proceeds would go to his estate). The evidence showed that Mr. Raine signed the "Assignment, Declaration and Disclaimer" for the policy and Ms. Judge, Ms. Raine's daughter, forged a signature for Quentine Jefferson. As such, Ms. Raine (through her daughter and third husband) collected the $800,000 from the policy.
Additionally, Enoch, the brother of Mr. Raine and step-brother of Mr. Everette, testified that Mr. Everette confessed that "James and Emma got me to kill Ernest." Similarly, Mr. Fowler testified to this same conversation, stating that Mr. Everette confessed that "Emma and James had hired him to murder Mr. Smith." Henry, who was also present for this confession, likewise testified that Mr. Everette said that "James and Emma gave him money to shoot this man down there."
Mr. Glover also testified that Mr. Everette admitted killing Mr. Smith and that Mr. Everette was to be paid for the murder by his half-brother, Mr. Raine and Ms. Raine.
Lastly, the testimony revealed that Ms. Raine became physically involved with Mr. Raine while Mr. Smith was still alive. However, Mr. Raine was later found dead in the bed he shared with Ms. Raine with multiple gunshot wounds to the head. The home's video surveillance system had been turned off the day before, and Ms. Raine was the last person recorded inside.
Like in Mack , where the circumstantial evidence was found to exclude most reasonable hypotheses of innocence, here, the evidence showed that Ms. Raine increased the value of a life insurance policy on Mr. Smith, removed herself as a beneficiary before the shooting, and then hired someone to shoot Mr. Smith, eventually committing insurance fraud to collect the proceeds of the policy. Additionally, the evidence revealed that Ms. Raine's third husband also died under suspicious circumstances.
The circumstantial evidence, when viewed in a light most favorable to the prosecution, demonstrates that a rational trier of fact could have found Ms. Raine guilty beyond a reasonable doubt, reasonably rejecting the hypotheses of innocence she advanced. The hypothesis that Mr. Raine acted without her knowledge could be rejected because at the time of the killing, Mr. Raine was positioned to receive $400,000 from Mr. Smith's life insurance policy. Thus, he would have had no need to involve Ms. Raine in persuading Mr. Everette that he would actually receive the $10,000 promised. Additionally, a rational factfinder could reject the hypothesis that Ms. Raine purchased the life insurance policy because Mr. Smith purchased a motorcycle and was not a beneficiary at his death. Given the gradual increase in the value of the policy, the change of beneficiaries just two months before the victim's death, the subsequent insurance fraud, and that Ms. Raine eventually did receive the full amount of the victim's life insurance policy, a rational trier of fact could reject *1084 this hypothesis. As such, we find that the State presented sufficient evidence to sustain Ms. Raine's conviction for second degree murder.
HEARSAY EVIDENCE
Ms. Raine asserts that the trial court improperly admitted hearsay testimony from Enoch, Mr. Fowler, Henry, and Mr. Glover. Defense counsel filed a motion in limine seeking to prevent the State from introducing inculpatory statements made by Mr. Everette as hearsay, which the trial court denied. The trial court also denied the motion based on the defense assertion that admission of the evidence would violate Ms. Raine's rights under the Confrontation Clause.
"[A] trial court's ruling on the admissibility of evidence will not be disturbed in the absence of a clear abuse of the trial court's discretion." State v. Bernard , 14-0580, p. 17 (La. App. 4 Cir. 6/3/15), 171 So.3d 1063, 1075.
After Mr. Everette refused to testify at trial, defense counsel moved for a mistrial based on the earlier objections, which the trial court denied. Several witnesses relayed statements made to them by Mr. Everette. Enoch, Mr. Fowler, and Henry testified about a confession made by Mr. Everette wherein he confessed that Ms. Raine and Mr. Raine hired him to kill Mr. Smith. Enoch testified that Mr. Everette confessed that "James and Emma got me to kill Ernest." Similarly, Mr. Fowler testified to this same conversation, stating that Mr. Everette confessed that "Emma and James had hired him to murder Mr. Smith." Henry, who was also present for this confession, likewise testified that Mr. Everette said that "James and
Emma gave [sic] him to shoot this man down there." Also, Mr. Glover testified about conversations with Mr. Everette while they were in jail together where Mr. Everette explained that he was paid to murder Mr. Smith and that a woman, who later married Mr. Everette's half-brother, was watching before the murder and called him when the victim pulled up to the house. Mr. Glover additionally corroborated the testimony of Enoch, Mr. Fowler, and Henry about the confession made to them by Mr. Everette.
Pursuant to the Louisiana Code of Evidence Article 804, certain statements made by a witness who is unavailable are not excluded by the hearsay rule. "[A] declarant is 'unavailable as a witness' when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court." La. C.E. art. 804(A). This includes a situation where the declarant "[p]ersists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so." La. C.E. art. 804(A)(2). Here, Mr. Everette refused to testify despite being ordered by the trial court to do so. In fact, Mr. Everette took the stand and refused to testify. As such, he was "unavailable" as a witness.
When a declarant is unavailable, a statement against the declarant's penal interest is not excluded by the hearsay rule. La. C.E. art. 804(B)(3). A statement against interest is one "which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true." Id. "The question under Rule 804(b)(3) is always whether the statement was sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true,' and this question can only be answered in light of all the surrounding *1085 circumstances." Williamson v. United States , 512 U.S. 594, 603-04, 114 S.Ct. 2431, 2437, 129 L.Ed.2d 476 (1994). The Louisiana Supreme Court opined:
When the statement is one against the declarant's penal interest, the circumstances surrounding the making of the statement may be significant in determining its trustworthiness. If a declarant admits sole responsibility for a serious crime, the statement is generally prima facie against interest so as to satisfy this requirement of the rule. However, if the statement is clearly self-serving, as when the declarant is seeking favorable treatment for himself in return for cooperation, the statement may be deemed not against his interest and thus may fall outside the exception. Likewise, when the declarant unknowingly speaks to informants or undercover agents, the statement is usually admissible under the exception.
State v. Hammons , 597 So.2d 990, 996 (La. 1992) (citations omitted).
While statements against the declarant's penal interest are admissible, non-self-inculpatory statements are not admissible, " 'even if they are made within a broader narrative that is generally self-inculpatory.' " State v. Lucky , 96-1687, p. 21 (La. 4/13/99), 755 So.2d 845, 857 (quoting Williamson , 512 U.S. at 600-601, 114 S.Ct. 2431 ). Those portions of a statement which are not in and of themselves against the declarant's penal interest are not admissible. Id. As such, statements of an accomplice that are collateral to a self-inculpatory statement, or statements that are self-serving, will not be admissible under Rule 804(B)(3). Williamson , 512 U.S. at 599-604, 114 S.Ct. 2431-37. However, "the confessions of arrested accomplices may be admissible if they are truly self-inculpatory, rather than merely attempts to shift blame or curry favor." Id. at 603, 114 S.Ct. at 2436.
For example, in Williamson v. United States , the declarant made statements to police that he was transporting drugs for the defendant. Id. at 597, 114 S.Ct. at 2433. While portions of the statement were self-inculpatory, such as the admission that the declarant was transporting drugs, other portions of the statement, such as that he was carrying drugs for the defendant, were not considered self-inculpatory because the declarant was trying to shift the blame for the crime. Id. at 603-04, 114 S.Ct. at 2436-37.
In United States v. Manfre , the declarant testified that her fiancé told her that he was going to burn down a nightclub for the defendant. 368 F.3d 832, 840 (8th Cir. 2004). Although the statement inculpated both the defendant and the declarant, it was admitted as a reliable statement against penal interest. Id. at 841. The context of the statement, made in private to the declarant's fiancé, corroborated its reliability. Thus, the court admitted the statement as one against penal interest and found that the admission did not violate the Confrontation Clause, as the statement was non-testimonial. Id. at 841-42.
Similarly, this Court has admitted a statement against penal interest where the declarant implicated both herself and the defendant in the crime. In State v. Moore , this Court admitted a declarant's statements to police that she took a bag from the defendant, which contained items stolen from the victim, that the defendant gave her money, and that she fled with the defendant despite knowledge of a robbery. 10-0314, pp. 5-6 (La. App. 4 Cir. 10/31/10), 57 So.3d 1033, 1037-38. Although these statements implicated both the defendant and the declarant, this Court found that they qualified as a declaration under penal interest. 10-0314, p. 6, 57 So.3d at 1038.
*1086 However, since the statements were made in police custody, they were considered testimonial, and thus their admission violated the Confrontation Clause. 10-0314, p. 7, 57 So.3d at 1038.
Unlike in Williamson , where the declarant implicated the defendant to shift the blame amid police interrogation, here, Mr. Everette did not implicate Ms.
Raine in order to shift the blame. Rather, Mr. Everette first confessed surrounded by family members in the car and again later in the privacy of his jail cell. Those confessions to his participation in the murder-for-hire were made not to law enforcement but to his family and cellmate. Like in Manfre , where the declarant admitted to committing a crime for someone else in an intimate setting to his fiancé, here, Mr. Everette confessed to committing a crime for Mr. Raine and Ms. Raine in a car surrounded by his family. Like in Moore , where the witness' statement that she took a bag from the defendant which contained items stolen from the victim was admissible despite inculpating both the defendant and the witness, here, Mr. Everette's statement that he shot Mr. Smith for Mr. Raine and Ms. Raine should likewise be admissible as a statement against interest. Unlike in Moore , where the statement was testimonial, as it was made in police custody, and thus violated the Confrontation Clause, Mr. Everette's statements were nontestimonial, as they were made to family members and a cellmate, thus giving the statements further indicia of reliability. Mr. Everette had no reason to lie to Mr. Glover in jail, nor to his family in the car. The statements were not made to shift the blame or curry favor with law enforcement. Rather, Mr. Everette was relaying his involvement in a murder for hire in circumstances indicating the trustworthiness of the statements. As such, the statements were properly admitted as nontestimonial statements against interest pursuant to La. C.E. art. 804(B)(3).
ALLEGED PROSECUTORIAL MISCONDUCT
Ms. Raine asserts that the jury was improperly influenced by prosecutorial misconduct when the prosecutor stated in closing arguments that if the jury "believe[s] that she's probably guilty, then the State has proved with sufficient evidence the case that is presented before you."
During closing argument, defense counsel stated "You can even say she's probably guilty, but that's not enough. You have to be able to say I am certain, and there is no reasonable doubt, there's guilt." In rebuttal, the prosecutor responded:
The Defense said that you may believe at the end of this case that she's probably guilty. She's probably guilty. If you believe that she's probably guilty, then the State has proved with sufficient evidence the case that is presented before you.
* * *
If you believe she's probably guilty, you don't just wake up in the morning and come here and believe she's probably guilty. You have reviewed the evidence, they're asking you to say she's probably guilty, but then I'm going to let her walk out of the front door.
Why do you believe she's probably guilty? Ask yourselves those questions. Why do you believe she's probably guilty?
Defense counsel objected, claiming that the prosecutor had made a "misstatement of the law" because "[p]robably guilty does not equal beyond a reasonable doubt." The trial court noted the objection and stated it would charge the jury with the definition of reasonable doubt during its instructions.
*1087 The legal standard for reviewing an argument of prosecutorial misconduct in a closing argument is set forth in State v. Casey , 99-0023, p. 17 (La. 1/26/00), 775 So.2d 1022, 1036.
The general rule concerning the scope of closing arguments is that they are confined to "evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." La. C. Cr. P. art. 774. Louisiana jurisprudence on prosecutorial misconduct allows prosecutors wide latitude in choosing closing argument tactics ... Further, the trial judge has broad discretion in controlling the scope of closing arguments. State v. Prestridge , 399 So.2d 564, 580 (La. 1981). And, even if the prosecutor exceeds these bounds, the court will not reverse a conviction unless "thoroughly convinced" that the argument influenced the jury and
contributed to the verdict. See State v. Martin , 93-0285, p. 17 (La. 10/17/94), 645 So.2d 190, 200 ; State v. Jarman , 445 So.2d 1184, 1188 (La. 1984) ; State v. Dupre , 408 So.2d 1229, 1234 (La. 1982).
Additionally, "a prosecutor's misstatements of the law ... in his ... closing remarks, do[es] not require reversal of a defendant's conviction if the court properly charges the jury at the close of the case." State v. Cavazos , 610 So.2d 127, 128-29 (La. 1992).
For example, in State v. Hill , the prosecutor misstated the burden of proof by stating, " 'We've met the prima facie burden of giving you evidence of defendant's guilt.' " Id. , 41,031, p. 5 (La. App. 2 Cir. 5/17/06), 930 So.2d 336, 340. "A prosecutor's burden is not a 'prima facie' case; however this misstatement was cured by the judge's instructions to the jury," which properly stated the burden of proof. Id. , 41,031,p. 6, 930 So.2d at 340.
Similarly, in State v. Roy , the defense claimed that the state misled the jury when it claimed during closing argument that "the law ... presumes that a person intends the natural consequences of his actions." 95-0638, pp. 14-15 (La. 10/04/96), 681 So.2d 1230, 1239. While that statement could arguably have improperly shifted the burden of proof from the State to Defendant, leading the jury to believe that there's a mandatory presumption, the Court found the misstatement was cured by the judge's instruction, which included a correct statement of the law. Id. The misstatement of the law by the prosecutor was not "so dominant that the jurors could not adhere to their charged duty to accept and to apply the law as given by the court." Id.
Here, like in Hill , where the prosecutor misstated the burden of proof in closing argument, the prosecutor misstated that if the jury believed Ms. Raine was
"probably guilty, then the State has proved with sufficient evidence the case that is presented before you." Similarly to Roy , where the prosecutor misstated the law in closing argument, here, the prosecutor misstated the law as it relates to the burden of proof in the closing argument. However, as in Hill and Roy , any misstatement was cured by the judge's instructions to the jury. The trial court charged the jury as follows, in pertinent part:
The defendant is presumed to be innocent until each element of the crime is necessary to constitute her guilt is proven beyond a reasonable doubt. The defendant is not required to prove that she is innocent. Thus, the defendant begins the trial with the presumption of innocence.
The burden is upon the State to prove the defendant's guilt beyond a reasonable doubt. In considering the evidence, *1088 you must give the defendant every benefit, or the benefit of every reasonable doubt arising out of the evidence or the lack of evidence.
If you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find her not guilty. While the State must prove guilt beyond a reasonable doubt, it does not have to prove guilt beyond all possible doubt.
Reasonable doubt is doubt based on reason and common sense, and is present when, after you have carefully considered all the evidence, you cannot say that you are firmly convinced of the truth of the charge.
* * *
The Opening Statements and Closing Arguments are not to be considered evidence.
Thus, the trial court gave a lengthy jury instruction as to the burden and the meaning of beyond a reasonable doubt. As such, any misleading statement concerning the burden of proof by the prosecutor was not "so dominant" that it was not cured by the trial court judge's instruction, which properly stated the burden of proof. Accordingly, the conviction and sentence of Ms. Raine is affirmed.
DECREE
For the above-mentioned reasons, we find that sufficient evidence was presented to sustain Ms. Raine's conviction for second degree murder. Additionally, the hearsay statements were properly admitted as nontestimonial statements against interest. Further, the alleged prosecutorial misconduct during closing arguments was cured by the trial court's jury instructions. As such, we affirm the conviction and sentence of Ms. Raine.
CONVICTION AND SENTENCE AFFIRMED