937 So.2d 5 (2006)
STATE of Louisiana, Appellee
v.
Tommy Louis DAVIS, Appellant.
No. 41,245-KA.
Court of Appeal of Louisiana, Second Circuit.
August 9, 2006.
Opinion Denying Rehearing September 21, 2006.
*6 W. Jarred Franklin, Louisiana Appellate Project, for Appellant.
Jerry L. Jones, District Attorney, Stephen T. Sylvester, Assistant District Attorney, for Appellee.
Before BROWN, STEWART, GASKINS, CARAWAY, and MOORE, JJ.
BROWN, Chief Judge.
Defendant, Tommy Louis Davis, was convicted of the attempted second degree murder of his ex-girlfriend, Victoria Moore. Thereafter, he was adjudicated a second felony offender and sentenced to 40 years at hard labor without benefit of probation, parole, or suspension of sentence. Defendant's conviction is affirmed; however, the habitual offender adjudication and *7 sentence are vacated, and the matter is remanded for further proceedings.

Discussion

Sufficiency of the Evidence
Defendant first asserts that the state failed to prove beyond a reasonable doubt that he had the specific intent to kill Victoria Moore when he stabbed her. He notes the emergency room physician's testimony that had defendant "actively desired to kill the victim, i.e., possessed specific intent, he could have chosen different locations on the body, such as the throat, to ensure the victim died."
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to the trier of fact's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
To sustain a conviction for attempted second degree murder, the state must prove that defendant intended to kill the victim and committed an overt act tending toward the accomplishment of the victim's death.[1]State v. Bishop, 01-2548 (La.01/14/03), 835 So.2d 434.
Specific intent is a state of mind which necessarily must be inferred from the circumstances and in particular from the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Taylor, 621 So.2d 141 (La.App. 2d Cir. 1993), writ denied, 93-2054 (La.02/11/94), 634 So.2d 371.
The victim, Victoria Moore, testified that defendant, a former boyfriend with whom she had a child, came to her grandmother's house after midnight on April 28, 2004. He came into the bedroom where she and her sister were putting their children to bed. Defendant told her to come with him and she refused. Victoria handed her baby to her cousin, Sinclair Moore, who had followed defendant into the room. Defendant then grabbed Victoria and pulled her out of the house. She tried to run from him and he pulled her clothing, ripping both her shirt and jacket off. Victoria was able to get away and back into the house. She ran into the bathroom, but defendant followed her and closed the door behind him.
Victoria testified that defendant began stabbing her with a long black-handled knife. Defendant told her she was going to die because he was tired of what she was doing to him. The victim's 75-year-old grandmother, who was in a wheelchair, was able to force the bathroom door open *8 and the victim ran out of the room. Defendant followed Victoria into the living room and began stabbing her again. Victoria testified that defendant stabbed her about nine times on her arm, chest, sides, and back. Victoria further stated that she was hospitalized as a result of her wounds and that while she was in the hospital defendant called her and told her that if she talked to the police he would come back to finish what he had started. After that telephone call, the hospital put security guards at her door.
The victim's testimony was corroborated by her sister, Andrea Moore, her grandmother, Martha Etier, and her cousin, Sinclair Moore.
The attending physician, Dr. Robert Kerry, testified that Victoria Moore had stab wounds primarily in her chest and "had a collapsed lung on one side that was particularly dangerous." Dr. Kerry testified that Victoria had to undergo surgery for the collapsed lung and remained in the hospital for a week. Dr. Kerry stated that Victoria's injuries were serious and potentially life-threatening in nature.
Defendant's argument that Dr. Kerry's testimony supports the assertion that there was no intent to kill is not supported by the record. Dr. Kerry's testimony regarding the stab wounds does not negate a finding of specific intent to kill. The following colloquy took place between defendant's trial attorney and Dr. Kerry:
Q: If your intent was to kill a person with a knife, are there other places such as the neck or throat that you might stab or slash someone that would be more efficient than killing (sic) them than where this particular lady was stabbed?
A: Ah, again, I'm not of the criminal mind. But, if you want to have a more rapid effect I'm sure if you got a person's airway or stabbed their spinal cord or maybe a blood vessel either in the neck or in the chest, the result would have been more rapid.
The specific intent of defendant to kill Victoria is overwhelmingly supported by the testimony. But for the efforts of this victim's grandmother and the emergency treatment she received, defendant may have been facing a charge of second degree murder rather than the attempt charge.

Habitual Offender Adjudication
Defendant's second assignment of error is that his adjudication as a habitual offender was invalid. He claims that the state did not prove that at a previous guilty plea in 1983 he was advised of his rights under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Additionally, he asserts that the state failed to prove the date that he was actually discharged from custody and supervision on the 1983 rape conviction in Texas and therefore, the state failed to prove that the instant offense occurred within the ten-year "cleansing period."
Louisiana Revised Statute 15:529.1(C) provides:
The current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than ten years have elapsed between the date of the commission of the current offense or offenses and the expiration of the maximum sentence or sentences of the previous conviction or convictions, or adjudication or adjudications of delinquency, or between the expiration of the maximum sentence or sentences of each preceding conviction or convictions or adjudication or adjudications of delinquency alleged in the multiple offender bill and the date of the commission of the following offense or offenses. In computing *9 the intervals of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods between the expiration of the maximum sentence or sentences and the next succeeding offense or offenses.

Validity of Guilty Plea
The record shows that defendant's trial attorney did not file an opposition to the multiple offender bill. At the hearing, the only argument made in opposition was to the computer fingerprinting and the calculation of the "cleansing period" for the prior offense. Thus, the issue of the validity of the plea is not properly before this court since a new basis for an objection cannot be raised for the first time on appeal. La. C. Cr. P. art. 841; State v. Cressy, 440 So.2d 141 (La.1983); State v. O'Neal, 501 So.2d 920 (La.App. 2d Cir. 1987), writ denied, 505 So.2d 1139 (La. 1987).[2]

Proof of Discharge Date
In connection with the 1983 rape conviction, the record shows that defendant was sentenced to serve ten years, but that his sentence was suspended and he was placed on probation. On April 25, 1985, defendant's probation was revoked, and he was ordered to serve his sentence; however, the April 25, 1985, ruling revoking defendant's probation shows that defendant was to be given credit for time already served. The record in this matter has absolutely no evidence to show defendant's actual discharge date for the prior offense. Because the present crime was committed April 28, 2004, defendant's discharge date is critical in determining the "cleansing period."
In State v. Boykin, 29,141 (La. App. 2d Cir.01/31/97), 688 So.2d 1250, 1257-1258, reh'g denied, appeal after new sentencing hearing, 34,133 (La.App. 2d Cir. 12/06/00), 774 So.2d 1074, appeal after new sentencing hearing, 36,989 (La.App. 2d Cir.03/05/03), 840 So.2d 64, writ denied, 03-1158 (La.11/14/03), 858 So.2d 416, this court observed:
This "cleansing period" begins to run from the date that a defendant is actually discharged from state custody and supervision. State v. Anderson, 349 So.2d 311 (La.1977); State v. Metoyer, 612 So.2d 755 (La.App. 5th Cir.1992). The state has the burden of proving the date of defendant's discharge from state supervision. See State v. Lorio, 94-2591 (La.App. 4th Cir.09/28/95), 662 So.2d 128. Where a defendant has been adjudicated a habitual offender, the state's failure to prove the defendant's date of discharge and thus prove that the "cleansing period" has not expired is error patent on the face of the record. See State v. Bullock, 311 So.2d 242 (La. 1975); see also State v. Baker, 452 So.2d 737 (La.App. 1st Cir.1984).
There is no evidence in the record before us showing the defendant's release date from state supervision for his simple *10 robbery conviction. At the habitual offender hearing, the state did not provide any documentation of defendant's discharge, but merely stated the date of defendant's prior conviction and stated that the "cleansing period" commenced one year from the date of conviction. Since there is no evidence in the record of defendant's discharge from prison for his prior felony conviction, the habitual offender adjudication and sentence is vacated and the case remanded for further proceedings.
For this reason, defendant's habitual offender adjudication and sentence must be vacated; however, the case is remanded for further proceedings to determine defendant's status as a habitual offender and for resentencing.

Conclusion
For the reasons set forth above, defendant's conviction is AFFIRMED. Defendant's habitual offender adjudication and sentence are VACATED and the matter is REMANDED for further proceedings.

ON REHEARING
PER CURIAM.
We deny the State's application for rehearing. We note that this court's opinion remanded for the State to show defendant's actual discharge date. We direct the parties to the Texas DOC pen-pack and PSI. Both indicate that defendant's case was transferred to Louisiana, and the "subject expired on 04/29/1997."
NOTES
[1] Although a showing of specific intent to commit great bodily harm is sufficient to support a conviction for second degree murder, to support a conviction of attempted second degree murder, however, the state must show specific intent to kill. See State v. Bishop, supra.
[2] Under the holding of State v. Shelton, 621 So.2d 769 (La.1993), the state's initial burden was to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. Once the state did this, it was defendant's burden to produce affirmative evidence showing an infringement of defendant's rights or a procedural irregularity in the taking of the pleas. This record reflects that defendant's attorney made no showing that there was any defect in the guilty plea proceeding.

Under the holding in State v. O'Neal, 34,814 (La.App. 2d Cir.10/12/01), 795 So.2d 1292, appeal after new sentencing hearing, 36,431 (La.App. 2d Cir.10/23/02), 830 So.2d 408, writ denied, 01-3207 (La.11/01/02), 828 So.2d 564, and the rationale set forth in State v. Shelton, supra, this record shows that the state carried its burden regarding the validity of the plea.