DANIEL L. DYSART, Judge.
| defendant Tyrone Hall appeals his conviction and sentence for possession of cocaine. For the following reasons, we affirm.
PROCEDURAL HISTORY:
The defendant was charged with one count of possession of cocaine, a violation of La. R.S. 40:967(0(2), on July 13, 2012. The defendant filed a motion for a preliminary hearing and a motion to suppress evidence, statements, and identifications. Following a hearing, the trial court denied the motion to suppress evidence and granted the motion to suppress statements.[1] The trial court also found probable cause and set a trial date. After several continuances, trial was set for April 30, 2013.
The defendant appeared for trial, after which a six person jury unanimously found him guilty as charged. On May 10, 2013, the trial court sentenced the defendant to five years at hard labor with credit for time served.[2] The trial court 12stated that “[i]t will be Bossier Parish Drug Treatment Facility.”[3] Immediately after the trial court pronounced the sentence, the State filed a habitual offender bill of information pursuant to La. R.S. 15:529.1, alleging that the defendant was a fourth felony offender. However, at the sentencing hearing, the trial court granted the defendant’s motion for appeal prior to sentencing.
A multiple bill hearing was set for June 21, 2013. The defendant pled not guilty and the hearing was continued to July 19, 2013. On July 10, 2013, the defendant filed a motion to quash the multiple bill and a motion for discovery under La. R.S. 15:529.1, both of which were set for hearing on September 13, 2013. Thus, this appeal was lodged prior to sentencing the defendant on the multiple bill.[4]
FACTUAL BACKGROUND:
Officer Walter Edmond testified that he and his partner, both assigned to the Sixth District on June 15, 2012, were on proactive patrol near the intersection of First and S. Prieur streets, when they observed the defendant exit a green pickup truck near the intersection First and S. Roman streets. The officers had previously-observed the same green truck circle the area several times.
*673 Officer Edmond observed the defendant, who was wearing a “very loud,” “goldish yellow” shirt, engage in a hand-to-hand transaction with another man. The officers followed the defendant and decided to stop him because they believed he had purchased drugs in the transaction. The defendant looked surprised when |she saw the officers, but continued walking. The officers approached the defendant and asked him random questions such as his address, where he was going, etc. As the defendant spoke, a white rock-like substance wrapped in plastic fell out of his mouth. The defendant attempted to step on the object, but the officer prevented him from doing so and his partner picked up the object, which he believed to be crack cocaine.[5] Officer Edmond handcuffed the defendant and read him his rights.
On cross-examination, Officer Edmond testified that there were no photographs of the evidence taken at the scene, nor were any audio or video recordings made of the officers’ interactions with the defendant. Officer Edmond also conceded that he did not observe the defendant make any furtive movements or put his hand to his mouth as the officers approached. No crack pipe, glass tube or other paraphernalia were found during the pat-down incident to arrest.
Officer Devin Ashmore, partner of Officer Edmond on the day of defendant’s arrest, testified and corroborated Officer Edmond’s testimony.
The defense called Stephen Fuller, an investigator for the New Orleans Public Defender’s Office. He visited the site of the arrest and took photographs to demonstrate the distance between where the officers were located and the locations they observed the defendant. The distance between the officers and the defendant as he made the hand-to-hand transaction was approximately 611 feet.
I ¿DISCUSSION:
In the defendant’s first assignment of error, he contends that the trial court erred in denying his motion to suppress evidence. Specifically, the defendant argues that no traffic violations were observed with regard to the green truck, and that he did not flee or make any furtive gestures when the officers witnessed the hand-to-hand transaction. Therefore, the officers had no reasonable grounds to approach the defendant and conduct an investigatory stop. Accordingly, the defendant contends, the seizure of the crack cocaine wrapped in plastic that fell from his mouth resulted from an illegal detention, and the crack seized from him should have been suppressed.
The defendant further argues that pursuant to State v. Tucker, 626 So.2d 707 (La.1993), the motion to suppress should have been granted. Specifically, the defendant submits that in Tucker, the Louisiana Supreme Court held that abandoned property seized pursuant to a stop conducted without a basis for reasonable suspicion had to be suppressed. Likewise, in this case, the defendant contends that the officers did not have reasonable cause to stop the defendant, who subsequently discarded the crack cocaine.
The Louisiana Supreme Court has recognized that a trial court’s factual findings regarding the admissibility of evidence seized without a warrant are entitled to great weight, while legal findings or con- *674 elusions by the trial court are reviewed de novo:
This court recently re-examined the standard which a reviewing court must apply to determine the correctness of a trial court’s decision relative to the suppression of evidence. State v. Wells, 2008-2262, p. 4-5 (La.7/6/10); 45 So.3d 577, 580-581. Initially, the State bears the burden of proving the admissibility of the evidence seized without a warrant when the legality of a search or seizure is placed at issue by a motion to suppress evidence. La.C.Cr.P. art. 703(D). The trial court’s ruling on the matter must be afforded great weight and will not be set aside unless there is an abuse of discretion. Wells, 2008-2262, p. 5; 45 So.3d at 581.
The analysis may be further broken down into the component parts of the trial court decision. “When a trial court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings.” Wells, 2008-2262, p. 4; 45 So.3d at 580; State v. Hunt, 2009-1589, p. 6 (La.12/1/09); 25 So.3d 746, 751. Legal findings or conclusions of the trial court are reviewed de novo. Id.; State ex rel. Thibodeaux v. State, 2001-2510, p. 1 (La.3/8/02); 811 So.2d 875.
State v. Thompson, 11-0915, pp. 13-14 (La.5/8/12), 93 So.3d 553, 563, reh’g denied (6/29/12)(footnote omitted).
In State v. Harris, 11-0941, pp. 3-4 (La.App. 4 Cir. 8/2/12), 98 So.3d 903, 908-09, this Court recognized the following principles with respect to searches and seizures:
The Fourth Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment, protects the right of the people “against unreasonable searches and seizures.” U.S. Const. Amend. IV; see also Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The Louisiana Constitution, too, protects “persons, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.” La. Const. Art. 1, § 5. Indeed, the protection against unreasonable searches and seizures under the state constitution is in limited circumstances even greater than that under the federal constitution. See State v. Tucker, 626 So.2d 707 (La.1993) (see discussion, post).
“Reasonableness is always the touchstone in striking the balance between legitimate law enforcement concerns, such as officer safety, and protected individual privacy interests.” State v. Bell, 09-574, p. 14 (La.App. 4 Cir. 12/9/09), 28 So.3d 502, 512. Accordingly, any inquiry under the Fourth Amendment and Article 1, Section 5 always centers on reasonableness.
| /With regard to the reasonableness of investigatory stops conducted pursuant to La.Code Crim. Proc. art. 215.1,[6] this Court *675 acknowledged the following principles in State v. James, 07-1104, pp. 3-4 (La.App. 4 Cir. 3/5/08), 980 So.2d 750, 752-53:
In Louisiana, a police officer “may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.” La.Code Crim. Proc. art. 215.1(A); see also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (the right to make such an investigatory stop must be based upon reasonable suspicion that the individual has committed, or is about to commit, an offense). Once a person is stopped pursuant to Article 215.1, the officer may conduct a limited pat down frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La.Code Crim. Proc. art. 215.1(B); see also United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (although the level of suspicion need not rise to the probable cause required for a lawful arrest, the police must articulate something more than an inchoate and unparticularized suspicion or hunch); State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (to make a brief investigatory stop on less than probable cause to arrest, the Upolice must have a particularized and objective basis for suspecting the particular person stopped of criminal activity).
In determining whether the police possessed the requisite minimal level of objective justification for an investigatory stop based on reasonable suspicion of criminal activity, reviewing courts look at the totality of the circumstances, allowing officers to make inferences from and deductions about the cumulative information available to them based on their own experience and specialized training. U.S. v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); see also State v. Williams, 421 So.2d 874, 875 (La.1982) (to determine whether a reasonable, articulable suspicion existed, the court must weigh all of the circumstances known to the police at the time the stop was made). An officer’s past experience, training and common sense may be considered in determining if the inferences drawn from the facts were reasonable. State v. Parker, 97-1994, p. 6 (La.App. 4 Cir. 12/9/98), 723 So.2d 1066,1068.
In State v. Francis, 10-1149, pp. 3-4 (La.App. 4 Cir. 2/16/11), 60 So.3d 703, 707-OS, this Court recognized that while an individual’s presence in a high-crime area, standing alone, is not sufficient to establish reasonable suspicion, an area’s reputation is a fact upon which officers may rely in determining reasonable suspicion, and which a trial court may consider as part of the totality of the circumstances when ruling on a motion to suppress:
*676 An individual’s presence, in an area of expected crime, standing alone, is of course insufficient to support a reasonable, particularized suspicion that a person is involved in criminal activity. Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). But we have recognized that the reputation of an area is an articulable fact upon which an officer may rely in determining reasonable suspicion. See State v. Ratliff, 98-0094, p. 3 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254. Inquiry into the criminal character of an area is a legally relevant contextual consideration when analyzing a Terry stop. Adams v. Williams, 407 U.S. 143, 144, 147-48, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). [footnote omitted][emphasis added]
With regard to an officer’s observation of a hand-to-hand transaction, in State v. Ulmer, 12-0949, pp. 8-9 (La.App. 4 Cir. 5/29/13), 116 So.3d 1004, 1009⅜0,[7]8 this Court recently recited the Louisiana Supreme Court’s finding that such an observation can suffice as a basis for an investigatory stop:
Explaining its finding that the observation of “an apparent hand-to-hand transaction” provided justification for an investigatory Terry stop, the Louisiana Supreme Court in the Fearheiley[8] case stated:
In the present case, the police officer observed the “independent, yet complementary and simultaneous actions by two parties,” conducting an apparent hand-to-hand transaction, Black v. United States, 810 A.2d 410, 413 (D.C.2002), although the officer could not see what either person had in his or her hand. The apparent exchange lasted no more than 15 to 20 seconds inside one of two cars which had arrived separately in the parking lot of a Circle K store with no apparent purpose that evening other than facilitating the brief exchange before the parties, who appeared to the officer to have no other connection to each other, went their separate ways. That the encounter had other possible innocent explanations, including the one offered by defendant after the stop that the unidentified female involved in the transaction had paid off a debt she owed him, did not. require the police officer to turn a blind eye to the circumstances and ignore what two years of experience in narcotics investigations, encompassing 15 to 20 arrests, had taught him, that in the narcotics trade, “when it’s done outside, it’s done very fast from one hand to the next.” See Arvizu, 534 U.S. at 274, 122 S.Ct. at 751 (“Although an officer’s reliance on a mere ‘hunch’ is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.”) (citing Terry, 392 U.S. at 27, 88 S.Ct. at 1883 and Soholow, 490 U.S. at 7, 109 S.Ct. at 1585).

Id.

*677 Similarly, this court in State v. Schaffer, 99-0766 (La.App. 4 Cir. 4/12/00), 767 So.2d 49, found that the observance by police officers h,of two individuals engaged in activity that was consistent with a drug transaction coupled with flight by the defendant provided the officers with reasonable grounds to stop the defendant. In the Schaffer case, the officers were on proactive patrol in a housing development when they observed the defendant and another individual engage in an apparent hand-to-hand exchange in the rain. When the two individuals saw the police car, they stood up abruptly and held onto the objects that they had in their hands. When the officers exited their vehicle, the defendant fled. This court reasoned that “[t]he combination of the defendant’s flight and the observance of activity consistent with a drug transaction gave the officers reasonable suspicion.” Schaffer, 99-0766 at pp. 8-10, 767 So.2d at 53-55; see also State v. hazard, 2008-0677, p. 5 (La.App. 4 Cir. 12/10/08), 2 So.3d 492, 496 (analogizing to the Schaffer case and finding police officers had reasonable suspicion to stop when the officers “observed a hand-to-hand exchange between Mr. Lazard and an unknown male that they suspected was a drug transaction based upon their experience and the reputation of the area”), [emphasis added]
In this case, Officer Edmond testified at trial and at the suppression hearing that he and his partner observed a green truck circling the area in which he and his partner were on proactive patrol. He subsequently observed the defendant, who was wearing a “loud” gold and yellow shirt, exit the green truck. Officer Edmond further testified that he observed a hand-to-hand transaction between the defendant and an unknown individual at the intersection of First and S. Prieur streets, an area with a reputation for narcotics transactions, and that he observed the defendant and the individual part ways directly after the transaction. Officer Edmond and his partner approached the defendant and began conversing with him from a distance of one to two feet, at which time a piece of crack cocaine fell out of his mouth. Thus, pursuant to State v. Fearheiley, 08-0307, p. 2, 979 So.2d at 489, the officers in this case had reasonable suspicion to conduct an investigatory stop after seeing the defendant engage in a hand-to-hand transaction. Accordingly, the crack cocaine that fell from the defendant’s mouth was legally seized, and the trial court properly denied the motion to suppress evidence.
hpAs t° the defendant’s second argument that abandoned property seized pursuant to a stop conducted without a basis for reasonable suspicion had to be suppressed, in this case, the officers’ observation of the hand-to-hand transaction established reasonable suspicion to conduct an investigatory stop. See State v. Fearheiley, 08-0307, p. 2, 979 So.2d at 489. Additionally, the defendant did not abandon the crack cocaine, as Officer Edmond testified that it simply fell from the defendant’s mouth as the officers spoke to him. Thus, State v. Tucker offers no support for the defendant’s argument. This assignment of error lacks merit.
In the defendant’s second assignment of error, he contends that the trial court imposed an excessive sentence. The State submits that after the appeal was lodged, the trial court adjudicated the defendant as a fourth felony offender, referencing “Exhibit A” to its appellate brief. However, the State erroneously attached a docket master relating to a different case entirely. Nevertheless, a review of the docket master for this case through the Criminal Dis *678 trict Court’s computer system indicates that the defendant has, in fact, been adjudicated a' multiple offender, although the sentencing hearing regarding same has not been held.
Accordingly, because the defendant has been adjudicated a fourth felony offender, and the trial court will vacate subject sentence prior to imposing the sentence as a fourth offender, this assignment of error is moot.
Our review of the record for errors patent reveals one. The trial court granted the defendant’s motion for appeal prior to sentencing. However, this Court has noted that a dismissal of the appeal for this reason is not necessary because it would only unnecessarily delay the appeal process. State v. Fields, 12-0674, n.S Jjj(La.App. 4 Cir. 6/19/13), 120 So.3d 309, 314; State v. Martin, 483 So.2d 1223, 1224-25 (La.App. 4th Cir.1986). Accordingly, no corrective action is needed.
CONCLUSION:
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. The State sought review of the trial court’s ruling granting the motion to suppress statements. This Court denied the writ. The defendant did not seek review of the denial of his motion to suppress evidence.

. Also on May 10, 2013, the defendant filed a motion for post-judgment verdict of acquittal and a motion for new trial. Both motions were denied.

. The minute entry and docket master indicate that Defendant was "recommended for [the] Bossier City Program.” R. 6, 24.

.The multiple bill adjudication and sentence, if appealed, will be raised in a subsequent appeal. The State indicates in its brief that it attached the docket master entries evidencing that the multiple bill hearing was conducted on September 30, 2013, at which time the trial court adjudicated the defendant a fourth felony offender and set a sentencing date of December 13, 2013. However, the docket master attached does not pertain to this defendant.

. The rock-like substance, which was identified as crack cocaine, was introduced as an exhibit by the State. The defense did not object to substance being introduced as crack cocaine, but did object to it being characterized as “the crack cocaine that was recovered off of the ground that fell out of the defendant’s mouth.”

. La. Code Crim. Proc. art. 215.1 provides:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a *675 dangerous weapon, he may search the person.
C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.
D. During detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity. However, nothing herein shall prohibit a peace officer from compelling or instructing the motorist to comply with administrative or other legal requirements of Title 32 or Title 47 of the Louisiana Revised Statutes of 1950.

. See also State v. Pratt, 08-1819 (La.9/4/09), 16 So.3d 1163, 1165 (quoting State v. Fearhei-ley, 08-0307, p. 2 (La.4/18/08), 979 So.2d 487, 489, in reversing a trial court’s grant of a motion to suppress, noting that "[p]olice officer's observation of apparent brief hand-to-hand transaction inside a vehicle gave rise to reasonable suspicion for an investigatory stop ...”).

. State v. Fearheiley, 08-0307, p. 2 (La.4/18/08), 979 So.2d 487, 488-89.