MAX N. TOBIAS, JR., Judge.
_JjThe defendant, Tyrone Hall (hereafter, “Hall” or “Defendant”), was charged with one count of possession of cocaine, a violation of La. R.S. 40:967 C(2), on 13 July 2012. The matter proceeded to trial on 30 April 2013, after which a six-person jury unanimously found Hall guilty as charged. On 10 May 2013, the trial court sentenced Defendant to five years at hard labor with credit for time served.[1] That same day, the state filed a habitual offender bill of information pursuant to La. R.S. 15:529.1, alleging that Hall was a fourth felony offender, predicating the multiple offender bill on three prior alleged convictions: possession of cocaine in 2009; simple burglary in 1991; and simple burglary in 1983.
On 21 June 2013, Hall entered a plea of not guilty to the multiple bill. On 10 July 2013, Defendant filed-a motion to quash the multiple bill and a motion for discovery. On 30 September 2013 after several continuances of the trial, the trial court adjudicated Hall a quadruple offender and denied his motion to quash the multiple bill. On 14- February 2014, Defendant filed motions for a downward departure from the statutory minimum sentence and for a new trial on the multiple [2bill. The *63 trial court heard and denied both motions that day. On 21 May 2014, after multiple continuances, the trial court, without assigning reasons, sentenced Hall to twenty years at hard labor with credit for time served, again denying the motion for a downward departure from the statutory minimum sentence. On 27 May 2014, the trial court denied Defendant’s motion to reconsider sentence. This timely appeal followed.

FACTS

The' facts of this case are set forth in this court’s opinion in State v. Hall, 13-1194 (La.App. 4 Cir. 3/19/14), 134 So.3d 671. We quote them as follows:
Officer Walter Edmond testified that he and his partner, both assigned to the Sixth District on June 15, 2012, were on proactive patrol near the intersection of First and S. Prieur streets, when they observed the defendant exit á green pickup truck near the intersection First and S. Roman streets. The officers had previously observed the same green truck circle the area several times.
Officer Edmond observed the defendant, who was wearing a “very loud,” “goldish yellow” shirt, engage in a hand-to-hand transaction with another man. The officers followed the defendant and decided to stop him because they believed he had purchased drugs in the transaction. The defendant looked surprised when he saw the officers, but continued walking. The officers approached the defendant and asked him random questions such as his address, where he was going, etc. As the defendant spoke, a white rock-like substance wrapped in plastic fell out of his mouth. The defendant attempted to step on the object, but the officer prevented him from doing so and his partner picked up the object, which he believed to be crack cocaine.[2] Officer Edmond handcuffed the defendant and read him his rights.
|sOn cross-examination, Officer Edmond testified that there were no photographs of the evidence taken at the scene, nor were any audio or video recordings made of the officers’ interactions with the defendant. Officer Edmond also conceded that he did not observe the defendant make any furtive movements or put his hand to his mouth as the officers approached. No crack pipe, glass tube or other paraphernalia were found during the pat-down incident to arrest.
Officer Devin Ashmore, partner of Officer Edmond on the day of defendant’s arrest, testified and corroborated Officer Edmond’s testimony.
The defense called Stephen Fuller, an investigator for the New Orleans Public Defender’s Office. He visited the site of the arrest and took photographs to demonstrate the distance between where the officers were located and the locations they observed the defendant. The distance between the officers and the defendant as he made the hand-to-hand transaction was approximately 611 feet.
Id., pp. 2-3, 134 So.3d at 672-73.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1

In his first assignment of error, Hall argues that the trial court erred by adjudi- *64 eating him a quadruple offender on two grounds: (1) the state failed to prove less than a ten-year lapse between the release date and next arrest, and (2) he was entitled to a jury trial as to whether -the state proved he was a quadruple offender beyond a reasonable doubt.
To obtain a multiple offender conviction, the state is required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony. State v. Payton, 00-2899, p. 6 (La.3/15/02), 810 So.2d 1127, 1130; State v. Neville, 96-0137, p. 7 (La.App. 4 Cir. 5/21/97), 695 So.2d 534, 538-539. Various methods are available to prove that the defendant is the |4same person convicted of the prior felony offense: testimony from witnesses, expert opinion regarding the fingerprints of the defendant when compared with those in the prior record, or photographs in the duly authenticated record. State v. Wolfe, 99-0389, pp. 4-5 (La.App. 4 Cir. 4/19/00), 761 So.2d 596, 599-600; State v. Henry, 96-1280, p. 7 (La.App. 4 Cir. 3/11/98), 709 So.2d 322, 325-326. Our Supreme Court adopted a scheme for burdens of proof in habitual offender proceedings in State v. Shelton, 621 So.2d 769 (La.1993) that has been summarized as follows:
If the defendant denies the multiple offender allegations then the burden is on the State to prove (1) the existence of a prior guilty plea, and (2) that defendant was represented by counsel when the plea was taken. Once the State proves those two things, the burden then shifts to the defendant to produce affirmative evidence showing (1) an infringement of his rights, or (2) a procedural irregularity in the taking of the plea. Only if the defendant meets that burden of proof does the burden shift back to the State to prove the constitutionality of the guilty plea. In doing so, the State must produce either a “perfect” transcript of the Boykin colloquy between the defendant and the judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an “imperfect” transcript. If anything less than a “perfect” transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant’s prior guilty plea was informed and voluntary.
State v. Francois, 02-2056, p. 6 (La.App. 4 Cir. 9/14/04), 884 So.2d 658, 663 (citing Shelton, 621 So.2d at 779-780 and quoting State v. Winfrey, 97-427, p. 30 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 80).
1 fiThe state predicated the multiple offender bill on three prior alleged convictions: possession of cocaine in 2009; simple burglary in 1991; and simple burglary in 1983.[3]
To support the 2009 conviction for possession of cocaine, the state introduced the arrest register dated 28 September 2008, the bill of information charging Defendant with possession of cocaine on 29 September 2008 in case number 482-036, the minute entry from 21 April 2009, and the guilty plea form also of 21 April 2009. The *65 minute entry and guilty plea form show that Defendant was represented by counsel, waived his rights to trial, confront his accuser, against self-incrimination, inter alia. The 21 April 2009 docket master entry and minute entry reflect that Defendant was sentenced to five years, with five years suspended, and five years of probation. The guilty plea form contains fingerprints, such as the fingerprint card dated 29 September 2008.
To support the 1991 conviction for simple burglary, the state introduced the arrest register dated 31 October 1990; the bill of information charging Defendant with simple burglary of an automobile on 31 October 1990 in case number 346-707; a docket master entry of 11 December 1990, indicating that Defendant was appointed counsel and entered a plea of not guilty; a docket master entry of 23 April 1991, indicating Defendant was found guilty as charged following a jury trial; and a docket master entry and minute entry dated 6 May 1991 stating that | (¿Defendant was sentenced to twelve years at hard labor. Both the arrest register and bill of information contained fingerprints.
To support the 1983 conviction for simple burglary, the state introduced an arrest register dated 4 December 1983; the bill of information of 24 January 1983, charging Defendant with simple burglary of a building and structure with the intent to commit a theft therein, amended on 9 February 1983 to a charge of burglary of an inhabited residence with the intent to commit a theft therein in case number 294-517; a docket master entry dated 18 February 1983, stating that Defendant was appointed counsel; a docket master entry of 7 June 1983, stating that following a jury trial, Defendant was found guilty as charged, a docket master entry and minute entry dated 6 July 1983 reflecting that Defendant was sentenced to ten years in the custody of the Department of Corrections (“DOC”) with credit for time served; and a docket master entry and minute entry dated 25 Julyl983, stating that Defendant pleaded guilty to being a multiple offender and was re-sentenced to ten years in the DOC’s custody with credit for time served. The arrest register contained fingerprints.
The state called latent print examiner Joseph Pollard of the New Orleans Police Department to testify at the 30 September 2013 multiple bill hearing. Mr. Pollard took Hall’s fingerprints that day and compared them with those contained in the 29 September 2008 fingerprint card taken in connection to the 2009 conviction for possession of cocaine in case number 482-036. He testified that the prints were from the same person. Mr. Pollard further testified that the information contained on the fingerprint card matched the information contained in the arrest register in case number 482-036.
|7Mr. Pollard then stated that the information contained in the arrest register for the 1991 simple burglary conviction in case number 346-707 contained the same information as in the certified pack in that case. He also stated that the fingerprints in the 1991 certified pack matched the Defendant’s fingerprints he took on the day of the multiple bill hearing. Mr. Pollard also testify that the information contained in the arrest register in the 1983 simple burglary conviction in case number 294-517 matched the information contained in the certified pack in that case. He compared the fingerprints contained in the 1983 arrest register and the fingerprints he took on the day of the hearing, and he testified that they were from the same person. Mr. Pollard reiterated that Defendant’s fingerprints he took on the day of the hearing were from the same person who was con *66 victed in case numbers 482-036, 346-707, and 294-517.
Hall argues that the state failed to prove that less than ten years had passed between his release from the 1991 simple burglary conviction and his 2009 arrest for possession of cocaine. La. R.S. 15:529.1 C provides that an offense will not be considered the second, third, or fourth offense if more than ten years have elapsed between the date of the current offense and the expiration of the maximum sentence of the previous conviction. Hall contends that he received a twelve-year sentence with credit for time served from his 31 October 1990 arrest in that case. However, he argues, the state presented no evidence of his release date. Because of “several early release options” that Hall does not specify, he argues that he could have been released in as little as six years. Thus, he contends that the state had to prove the release date for the 1991 conviction was less than ten years prior to the arrest on 29 September 2008 in his 2009 conviction.
[sAs a preliminary matter, as the state points out, Defendant failed to make the cleansing period argument at trial. As this court in State v. Cossee, 95-2218, p. 2 (La.App. 4 Cir. 7/24/96), 678 So.2d 72, 72-73, explained:
A threshold question is whether the defendant has preserved this issue for appellate review. Following the Louisiana Supreme Court decision in State v. Shelton, 621 So.2d 769 (La.1993), the Louisiana Legislature amended La.R.S. 15:529.1(D)(l)(b) to place the burden of challenging a predicate conviction in a multiple bill proceeding on the defendant. That subsection now provides, in pertinent part:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to- a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack a sentence. [Emphasis supplied.]
In Cossee, the defendant objected to the sufficiency of the evidence of a prior conviction. However, he failed to file a written response to the multiple bill in the trial proceedings. The court ruled that the defendant’s objections to his (¡¡multiple offender status were not preserved for appeal due to his failure to file a written response. Id; see also State v. Moore, 10-0314, pp. 10-11 (La.App. 4 Cir. 10/13/10), 57 So.3d 1033, 1040 (where the cleansing period issue was not preserved for appeal when the defendant did not file a written response and only orally objected to the identity of the person previously convicted).
Hall filed a written response to the multiple bill in the form of a motion to quash, arguing that (a) the state failed to provide him with the multiple bill or any support *67 ing documentation thereof and (b) constitutional challenges. Defense counsel also filed that day a motion for discovery requesting the documentation of the alleged prior convictions. However, the documentation and discovery issues were resolved prior, to the multiple bill hearing. Defense counsel stated on the record that the state had provided the discovery the day she requested it. Also at the hearing, defense counsel’s arguments for the motion to quash were primarily on constitutional grounds concerning a right to trial by jury. In connection with the 1991 conviction, defense counsel orally objected to the expert’s (Mr. Pollard) qualification for the fingerprint analysis and the fingerprints on the back of the arrest register in the 1991 simple burglary conviction in case number 346-707 on the grounds that the state had not previously provided it to the defense.[4] She also argued that no evidence was presented that demonstrated a trial had occurred in that case aside from a docket master entry, and that no witnesses authenticated the certification packet.
While Hall made the above objections, he did not argue the cleansing period in connection to any of the prior convictions. In similar circumstances, this court 11flhas held that such objections on other grounds were not sufficient to preserve an issue for appeal. For example, in State v. Landfair, 10-1693 (La.App. 4 Cir. 7/20/11), 70 So.3d 1061, the defendant on appeal argued that the state had failed to prove that he was the person convicted in the previous felonies and that the guilty pleas had been validly executed. Id. at p. 6, 70 So.3d at 1066. Although the defendant had filed a motion to quash, the grounds on which it was filed concerned prior convictions entered on the same date. After a review of the defendant’s oral objections at the hearing, this court concluded that counsel had failed to make any arguments relating to his identity or the validity of guilty pleas.[5]
Despite the filing of the motion to quash, this court concluded that the defendant had failed to preserve his claims that the state did not prove his identity and that the prior pleas were valid. Id. at pp. 6-7, 70 So.3d at 1066.
Despite the jurisprudence in this circuit (Moore, supra), we note that we are in the minority as three other circuit courts of appeal in this state would apply the “error patent” rule to the facts before us.[6] For example, in State v. Abdul, 11-863, pp. 28-29 (La.App. 5 Cir. 4/24/12), 94 So.3d 801, 820-21, the court stated:
Defendant did not file a written response to the multiple bill, and he did not raise this objection concerning the cleansing period during the multiple bill hearing. Ordinarily, the issue would not be properly preserved for appellate review. See La. R.S. 15:529.1(D)(l)(b) (Any challenge to a previous conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.). However, since the sufficiency of the proof of the “cleansing period” bears on the defendant’s due process rights, courts can review the issue on appeal |nas an error patent. State v. Boiteux, 11-191 (La.App. 5 Cir. 12/13/11), 81 So.3d 123, 127-28, (citing State v. Mosley, 08-1319, *68 p. 9 (La.App. 5 Cir. 5/26/09), 16 So.3d 398, 403). [Emphasis supplied.]
In State v. Robinson, 47,427, p. 7 (La.App. 2 Cir. 10/3/12), 105 So.3d 751, 755, the court stated:
The 10-year “cleansing period” begins to run from the date that a defendant is actually discharged from state custody and supervision. State v. Davis, [41,245 (La.App. 2 Cir. 8/9/06), 937 So.2d 5] supra; State v. Metoyer, 612 So.2d 755 (La.App. 5th Cir.1992). The state has the burden of proving the date of defendant’s discharge from state supervision. Id. Where a defendant has been adjudicated a habitual offender, the state’s failure to prove the defendant’s date of discharge and thus prove that the “cleansing period” has not expired is error patent on the face of the record. Id.; State v. Timmons, 43,602 (La.App. 2d Cir. 10/22/08), 998 So.2d 145.
The record in this matter fails to prove defendant’s discharge date from his 1988 convictions — an error patent. State v. Davis, supra. Because the in-, stant crime was committed in 2006, defendant’s discharge date is critical in determining whether the “cleansing period” has lapsed. Accordingly, pursuant to State v. Davis, supra, defendant’s habitual offender adjudication and sentence must be vacated and the case remanded to determine defendant’s status as a habitual offender and for resentenc-ing. [Emphasis supplied.]
The First Circuit also takes this approach to the issue:
Defendant argues an additional allegation of error which appears for the first time in his brief. Since this allegation, if proved, would be error patent on the face of the record under La.C.Cr.P. art. 920, we find it necessary to review this additional allegation.
In substance, defendant alleges that it was error to have sentenced him as a second felony offender under La.R.S. 15:529.1. Defendant contends that the sentence was improper on the record submitted because it was not demonstrated that the five year cleansing period of La.R.S. 15:529.1(C) could be avoided.
State v. Baker, 452 So.2d 737, 745-746 (La.App. 1st Cir.1984) [emphasis supplied].
We discussed this issue in State v. Moore, 10-0314, p. 11, 57 So.3d at 1042 (on rehearing):
This court has not taken the position that it is obligated to conduct an errors patent review for the elapse of possible cleansing periods for predicate offenses in multiple bills, when defendants have a statutory obligation to raise objections to the same. However, considering that we lack a complete record of the intent of defense counsel or the defendant in failing to timely object to the multiple bill, this issue is preserved and may be raised in an application for post-conviction relief.
Lastly, Moore argues that our holding in this matter is inconsistent with the holding of the Supreme Court in [State v.] Bullock, [311 So.2d 242 (La.1975) ] and the holdings of the First, Second and Fifth Circuits in State v. Baker, 452 So.2d 737 (La.App. 1 Cir. 5/30/84), State v. Harris, 20 So.3d 1121 (La.App. 2 Cir. 6/24/09), and State v. Mosley, 16 So.3d 398 (La.App. 5 Cir. 5/26/09), respectively. In Bullock, the Supreme Court reversed the multiple offender adjudication of the defendant because the certification offered to prove the existence of the predicate offense — a court martial conviction — was statutorily deficient. We note, however, that in Bullock, the opinion of the Supreme Court did not address the failure *69 of the defendant to object to the multiple bill, and what effect, if any, the failure to object to a multiple bill should have on appeal. Additionally, while we take the holdings of our fellow circuits into consideration, we decline to follow them in this instance. Finding that our holding in this matter is consistent with our previous opinions, we find that the issues raised in the application for rehearing of Moore do not have merit.
Despite the inconsistency in the circuits, we find that the error patent issue need not be addressed. Instead, we rely on La. R.S. 15:571.5, which states in pertinent part:
A. When a prisoner committed to the Department of Public Safety and Corrections is released because of | ^diminution of sentence pursuant to this Part, he shall be released as if released on parole.
B. (1) Before any prisoner is released on parole upon diminution of sentence, he shall be issued a certificate of parole that enumerates the conditions of parole. These conditions shall be explained to the prisoner and the prisoner shall agree in writing to such conditions prior to his release on parole.
(2) The person released because of diminution. of sentence pursuant to this Part shall be supervised in the same manner and to the same extent as if he were released on parole. The supervision shall be for the remainder of the original full term of sentence. If a person released because of diminution of sentence pursuant to this Part violates a condition imposed by the parole committee, the committee shall proceed in the same manner as it would to revoke parole to determine if the release upon diminution of sentence should be revoked. [Emphasis supplied.]
Hall was arrested on 31 October 1990 and convicted for simple burglary. In 1991, he was sentenced to twelve years at hard labor with credit for time served. Regardless of when he physically left prison, it is more probable than not that he would have been under DOC supervision until 2002, less than ten years before his next arrest in September 2008. Therefore, we need not reach the issue of whether he failed to preserve this issue for appeal or whether the failure of the state to prove the date of his release from DOC custody should be addressed as an error patent.[7]
Hall next argues that his constitutional rights were violated because he was deprived of a jury trial for his multiple offender adjudication. However, it is well-114established that a defendant is not entitled to a jury trial under the habitual offender law, as articulated by this court in State v. Landfair, 10-1693, pp. 5-6 (La.App. 4 Cir. 7/20/11), 70 So.3d 1061, 1065-66:
The appellant asserts next that under the Fourteenth and the Sixth Amendments to the U.S. Constitution, he was entitled to have a jury decide if he is a multiple offender. He argues that the United States Supreme Court cases of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Shepard v. U.S., 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), pro *70 vide only that the bare existence of a prior conviction does not need to be determined by a jury: Anything else, such as the identity of a defendant as the person who was previously convicted, must be decided by a jury.
Again, the argument that a defendant is entitled to a jury trial in connection with a multiple offender proceeding pursuant to La. R.S. 15:529.1 has been rejected multiple times, including by this Court in [State v.] Vincent, 2010-0764, pp. 10-11 [ (La.App. 4 Cir. 1/19/11) ], 56 So.3d [408,] at 415; State v. Juengain, 2009-0425, p. 11 (La.App. 4 Cir. 1/20/10), 41 So.3d 499, 506-07; and State v. Smith, 2005-0375, pp. 3-5 (La.App. 4 Cir. 7/20/05), 913 So.2d 836, 839-840. The appellant cites no new jurisprudence from the Louisiana Supreme Court or the United States Supreme Court that casts doubt on these decisions. This argument has no merit.
Likewise, Hall cites no Louisiana or federal law or jurisprudence in support of his assertion that he was entitled to a jury trial on the habitual offender issue. His argument lacks merit.

ASSIGNMENT OF ERROR NUMBER 2

In his second assignment of error, Hall argues that his twenty-year sentence is excessive.
Hall’s most recent conviction for violation of La. R.S. 40:967 C(2) carries a sentence of imprisonment at hard labor for not more than five years. The Habitual | ^Offender Law, La. R.S. 15:529.1 A(4)(a), provides that if the fourth or subsequent felony, as a first offense, would carry a sentence of less than a lifetime sentence, the offender shall be imprisoned for no less than twenty years and not more than his natural life. Defendant was sentenced to twenty years, the mandatory statutory minimum.
Mandatory minimum sentences imposed on multiple offenders under the Habitual Offender Law are presumed to be constitutional, and a defendant bears the burden of rebutting that presumption. State v. Ladd, 13-1663, p. 3 (La.App. 4 Cir. 7/2/14), 146 So.3d 642, 644, vacated and remanded on other grounds, 14-1611 (La.3/27/15), 164 So.3d 184, (citing State v. Johnson, 97-1906, pp. 5-6 (La.3/4/98), 709 So.2d 672, 675, and State v. Short, 96-2780, p. 8 (La.App. 4 Cir. 11/18/98), 725 So.2d 23, 27). To rebut the presumption that a mandatory minimum sentence is constitutional, a defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances, the defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id. (quoting State v. Lindsey, 99-3302, p. 5 (La.10/17/00), 770 So.2d 339, 343). “[Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations.” Lindsey, p. 5, 770 So.2d at 343 (quoting Johnson, 97-1906, p. 8, 709 So.2d at 677).
At the 14 February 2014 hearing on the motion to depart downward from the statutory minimum, Orleans Public Defender’s Office social worker Kimberly Thomas testified about the social history investigation that she conducted of Hall. 11fiShe testified that Defendant grew up in the Desire Housing project, had a chaotic home life, was emotionally abused by his mother, physically abused by his older sibling, bullied by peers, and became addicted to drugs between the ages of sixteen and nineteen. He used heroin, marijuana, and crack cocaine and became homeless at age eighteen. He also has a history of reading *71 disability that resulted in excessive bullying in school, further complicating his ability to learn. Ms. Thomas testified that Hall has not yet achieved full literacy skills, but, with help, has applied for social security disability payments because of this disability.
Ms. Thomas further stated that two homeless aid centers and their social workers had begun to work with Defendant: the Henry Thompson Center, where Hall has attended narcotics anonymous classes, and Odyssey House. Ms. Thomas further testified that Ms. Buckman at the Thompson Center was impressed by Hall’s humility and gracious attitude. Ms. Thomas also stated that Ms. Regina Quigley at Odyssey House had obtained temporary housing for Defendant. Both Ms. Buck-man and Ms. Quigley, Ms. Thomas stated, strongly feel that Hall has the ability to rehabilitate and that he deserves a real chance at sobriety.
Hall, himself, testified, asking for a chance for a better life and stated that he had begun helping fellow homeless individuals on the streets. Defense counsel went on to argue that at age fifty-five, a twenty-year sentence was effectively a life sen-, fence, as Hall would likely die in prison. She argued that two non-violent drug offenses and two simple burglariés do not merit a twenty-year sentence. Defense counsel also argues that Hall has secured a place in a work release program, and he has substantial family and community support.
Defendant cites State v. Burns, 97-1553, pp. 9-11 (La.App. 4 Cir. 11/10/98), 723 So.2d 1013, 1019-1020, where this court remanded for resentencing after a | ¶ quadruple offender was sentenced to the mandatory minimum life sentence. There, the defendant was twenty-five years of age, a cocaine addict, and was in possession of two rocks of crack cocaine at the time of his arrest. He was convicted of distribution of cocaine and possession of cocaine with intent to distribute. His two prior convictions were for possession of cocaine and for possession of stolen property. His father testified as to the existence of familial and community support structures available to the defendant. The court noted that all of the defendant’s pri- or felonies were non-violent, and that he suffered from diminished brain function. The court, citing State v. Hayes, 97-1526 (La.App. 1 Cir. 5/15/98), 712 So.2d 1019, remarked that a life sentence eliminates the possibility of rehabilitation, and taxpayers would be saddled with the fiscal responsibility of imprisoning the defendant for life. We pointed out that as the defendant ages, the costs would only increase due to imminent geriatric health issues. We remanded for resentencing in light of these enunciated factors.
Hall also cites State v. Stevenson, 99-2824, p. 4 (La.App. 4 Cir. 3/15/00), 757 So.2d 872, 874-875, where the defendant was adjudicated a third offender and sentenced to the mandatory minimum life sentence. The defendant was convicted of possession of cocaine with intent to distribute. Her previous offenses were a felony theft and simple burglary of an inhabited dwelling. Like the defendant in Bums, the defendant did not have a history of violent crime, and the court stated that it was likely that she sold cocaine to support her drug addiction. The defendant was also thirty-eight years old and a mother. Citing Hayes, we observed the impossibility of rehabilitation and the taxpayer’s burden which accompanies a life sentences. Ultimately, this court remanded for a hearing for the defendant to demonstrate why a life sentence is excessive in her circumstances.
118Contrariwise, this court, in State v. Bentley, 02-1564 (La.App. 4 Cir. 3/12/03), *72 844 So.2d 149, distinguished the standard of review for a mandatory minimum twenty-year sentence from a mandatory minimum life sentence. In Bentley, the defendant was a third offender, with one conviction of distribution of cocaine and two convictions of possession of cocaine. He was sentenced to the mandatory minimum twenty years. The defendant argued that he was an addict who only sold drugs to support his habit. Id., pp. 10-11, 844 So.2d at 155-156, citing Burns, 97-1553, p. 8, 723 So.2d at 1019, this court noted that heightened scrutiny is triggered when a multiple offender receives a life sentence. We observed that a twenty-year sentence does not merit such heightened scrutiny and ultimately rejected the defendant’s argument that his sentence was excessive. However, we found significant that the defendant put forth no evidence to support his excessive sentence argument. Bentley, at pp. 13-14, 844 So.2d at 157.
Here, Hall was convicted of a small amount of cocaine — less than one gram. Defendant has been a drug addict since his adolescence. He has been homeless for much of his life. His simple burglary convictions were likely perpetrated to support his lifelong drug addiction. He recently obtained help from two community centers and social workers, who are optimistic about his chance at rehabilitation. He also secured a place in a work release program. Defense counsel and the social' worker stated that Hall has a sister who is willing to help him on his path to rehabilitation. Defendant is now fifty-six years old, and the social worker testified that he will most likely die during his twenty-year imprisonment. As he advances in age, the cost of imprisoning him will only increase.
|19We find Hall’s circumstances noteworthy and of further consideration. Recently, the Supreme Court in Ladd, supra, reversed our judgment affirming a mandatory minimum of twenty years, vacated the sentence imposed by the trial court, and remanded the case to the trial court for resentencing. Specifically, the Court stated that the resentencing was to be in compliance with La.C.Cr.P. art. 894.1 C: “The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence.”
In the instant case, the trial court failed to comply with La.C.Cr.P. art. 894.1 C. Therefore, in accordance with Ladd, we vacate the sentence and remand the case to the trial court for resentencing in compliance with article 894.1 C.[8]

CONCLUSION

Because the trial court failed to sentence Hall in accordance with La.C.Cr.P. art. 894.1 C, and in light of the circumstances of the Defendant’s life, addiction, and history as a non-violent offender, we vacate the sentence and remand the case for re-sentencing.

SENTENCE VACATED; REMANDED.

. Previously, this court affirmed Hall’s conviction and sentence. State v. Hall, 13-1194 (La.App. 4 Cir. 3/19/14), 134 So.3d 671, writs denied, 14-0802 (La.11/7/14), 152 So.3d 174 and sub nom. State ex rel. Hall v. State, 14-1417 (La. 11/7/14), 152 So.3d 174.

. In footnote 5, the court stated:
The rock-like substance, which was identified as crack cocaine, was introduced as an exhibit by the State. The defense did not object to substance being introduced as crack cocaine, but did object to it being characterized as "the crack cocaine that was recovered off of the ground that fell out of the defendant’s mouth.”

. The state's exhibits are as follows: (1) a fingerprint card containing Defendant's prints taken by latent print examiner Joseph Pollard the day of the hearing on the multiple bill; (2) a fingerprint card containing Defendant's prints taken on 29 September 2008 in connection with the 2009 possession of cocaine conviction; (3) an arrest register in connection with the 2009 possession of cocaine conviction and certification pack for the 2009 possession of cocaine conviction; (4) an arrest register in connection to the 1991 conviction for simple burglary; (5) a certification pack for the 1991 conviction for simple burglary; (6) an arrest register in connection to the 1983 simple burglary conviction; and (7) a certification pack for the 1983 simple burglary conviction.

. The state contended that it had provided the document in discovery.

. Subsequent trial counsel in the case at bar filed a second motion to quash and motion for discovery on the basis that the state had not provided the evidence. However, at the hearing, counsel stated that he had received the discovery and was ready to go forward. Counsel made no objections regarding identity or the validity of the guilty pleas.

.We cannot locate a Third Circuit case that specifically addresses this issue.

. Of course, this issue could have been avoided in its entirety had the state simply complied with La. R.S. 15:529.1 F and introduced Hall’s penitentiary packet or a certificate from the DOC indicating the date of his release from supervision, considering the eighteen-year gap between his arrests in 1990 and 2008. In light of our remand, the defense may demand proof that Hall was released from custody stemming from his 1990 arrest within ten years of his 2008 arrest.

. Admittedly, Hall is not a more youthful offender like the defendants in Burns, Stevenson, and Ladd. But do we want to say that he cannot change his life at his age? It appears that, for the first time in his life, Hall has a willingness and support to change.